## IN RE APPLICATION OF GRISWOLD.

PATENTS; ANTICIPATION; PATENTABLE NOVELTY.

1. Claims for improvements in what is designated by the applicant for a patent as an "adjustable single-loop wire bale-tie," consisting substantially in forming the eye or loop out of the tie, or, as expressed in the specification "integral" therewith, and of peculiar shape, whereby the free end of the tie is gripped and wedged in the eye by the expansion of the bale, *held* anticipated by the prior art, and a patent therefore properly refused.

2. The use in the same wire band of two features separately old in wire bands to effect the identical functions performed separately by each of them in the prior devices *held* not to constitute patentable novelty.

No. 37.  Patent Appeals.  Submitted January 13, 1896.  Decided December 8, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents refusing a patent for an improvement in bale-ties. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin H. Brown* for the appellant.

*Mr. Levin H. Campbell* for the Commissioner of Patents.

Mr. Justice HAGNER, of the Supreme Court of the District of Columbia, who sat with the court in the hearing of this

cause in the place of Mr. Chief Justice ALVEY, delivered the opinion of the Court:

This application was filed in the Patent Office on the 28th of November, 1893. On the 8th of January, 1894, the application was examined and rejected by Principal Examiner Townsend. On the 31st of January, 1894, the counsel for the applicant filed a request for a reconsideration of the case, accompanied by a careful argument. In compliance with the request the examiner considered the counsel's argument and affirmed his former decision, and finally rejected the application on the 6th of February, 1894. An appeal was taken from this order on the 7th of February, 1894, to the examiners-in-chief and was argued before the board, and the decisions below were affirmed on the 6th of March, 1894. Thereupon an appeal was taken by the applicant to the Commissioner of Patents in person, and on the 25th of June, 1895, after argument before him, the Commissioner affirmed the ruling of the board of examiners. From this last decision the present appeal was taken to this court.

A careful examination of the record and argument of counsel for the applicant have failed to disclose any sufficient reason for reversing these repeated rulings by the authorities of the Patent Office, all to the same effect.

Testimony that carries thorough conviction is essential to justify a reversal of such repeated decisions by the appellate court upon matters of fact. *Morgan v. Daniels*, 153 U. S. 120.

In his application, Mr. Griswold claims " to have invented a new and useful improvement in bale-ties of which the following is a specification : The object of my invention is to improve the construction of that form of adjustable wire bale-tie known as the 'single-loop' tie, by giving to it a holding capacity far in excess of any that it has hitherto possessed ; and this is without increasing in anywise materially its cost of manufacture."

9 Ct. App.—33

His claims are stated in four forms, somewhat differing from each other, as follows :

" I claim—

" 1. A wire-band fastener sonsisting of a closed wire loop or eye formed with an angle adapted to receive the free end of said band and to hold the same by the wedging of said end in said angle, substantially as described.

" 2. A wire-band fastener consisting of an elongated, closed wire loop or eye, having its sides converging toward one end, to form an angle adapted to receive the free end of said band and to hold the same by the wedging of said end in said angle, and diverging near the opposite end ; said sides being constructed to be drawn inward to exert a pinching or grasping effect upon said wedged free end, when strain is applied to said fastener.

" 3. In combination with a wire band and integral therewith, a closed wire loop or eye formed with an angle adapted to receive a free end of said band and to hold the same by the wedging of said end in said angle.

" 4. In combination with a wire band and integral therewith, a closed wire loop or eye formed with an angle adapted to receive a free end of said band and to hold the same both by the wedging of said end in said angle and by the pinching and grasping action upon said end due to the drawing inward of the sides of said loop under strain."

The applicant's device was in the·form of a wire band or tie one end of which is twisted into an oval loop formed of the wire itself, the lower end of the loop being narrowed into an angle no longer than the diameter of the wire.	In use the free end of the wire band or tie, after being brought around the bale or parcel and introduced into the loop, is then pulled or jerked down into the lower part of the loop, so as to occupy the entire space of the angle, and is then wrapped around and upon the wire itself.

The chief use ascribed to the invention was to secure the contents of bales of hay, cotton, etc., by efficient and cheap

ties or bands. At the time of the application there were several methods in use of accomplishing this result. The simplest was to surround the bale with a cord of hemp, wire or other flexible material having no loop or attachment at either end and to fasten the parcel by using as much of the cord as might be required for the particular parcel, cutting off what was not needed, and tieing the ends of the remaining cord together. This was evidently a costly and slow method, which was apt to be insecure when applied to bulky or heavy bales, and all the contrivances mentioned in the record in this case were designed to remove or diminish some or all of these disadvantages.

One of the improvements was in the use of bands or cords of wire or similar material, of definite lengths, adapted to the varying sizes of the bales as they came from the different cotton or hay presses, and hence were known as "dimension-tires." At the two ends of such bands fixtures were attached representing the parts of the clasps or buckles of a belt. As these bands could only be used for bales of dimensions conforming to their several lengths, they were inconvenient, while the addition of the metallic fastening rendered them troublesome and costly.

A great desideratum was to obtain some device by which the same band could be applied indifferently to small or large bales, using only as much of it as might be found necessary for the particular parcel and cutting off whatever was in excess, and forming the fastening or clamping parts out of the cord itself, thus utilizing the entire cord, and thereby greatly diminishing the cost of the tie, while insuring greater security and convenience in its use.

The applicant claimed to have accomplished these results by his invention, which he insists is an original and useful improvement upon the state of the art at the time of his application.

All of the decisions in the Patent Office on the application recited above denied the validity of these claims upon

the ground that the alleged invention was not patentable
as a new and useful device.

First. Perhaps the most important of the claims of the
applicant is that the closed eye or loop of his invention is
formed out of the wire itself, or, as expressed in the specifi-
cation, is "integral" with the wire. Undoubtedly this fea-
ture would possess a great advantage in strength, conven-
ience and economy over a band having a loop made of a
piece of foreign metal attached to the wire similar to what
is described by the applicant in his application as having
been a feature of his previous invention and patent which,
as he says, consisted of a "wire band having at one end an
eye formed by twisting," in which he arranged "a grooved
saddle or thimble of steel, made V shape, so that when the
free end is inserted in this saddle," etc.

The novelty of this feature of the applicant's device can-
not be admitted after an examination of the numerous mod-
els and specifications filed in this cause.

In the Lenox patent of April 4, 1876 (No. 7,026), the loops
are formed by bending the wire upon itself, and this pecu-
liarity thus distinctly claimed as far back as 1876 appears
in the reissue upon a Lenox patent of December 21, 1869.
The same arrangement appears in the Lenox patent of Au-
gust 3, 1880, No. 230,789, and in the patent of Frank B.
Griswold of July 21, 1885, No. 322,442. Evidently the ap-
plicant was not entitled to claim this particular feature as
a novel invention in November, 1893.

Second. The remaining feature of novelty claimed by the
applicant consists of the peculiar form of the loop therein
described.

The form of the loop in the Foote patent is essentially the
same as that presented by the applicant, and the difference
insisted on in the argument introduced into the application
seem to us to be rather ingenious and imaginary than real.

The device for the loop in the Kilmer patent exhibits less
claim to identity ; but its similarity in form and results is

so great that it was properly said by the board of examiners-in-chief in their opinion "to anticipate the present device in all essentials, structurally and functionally."

In the Foote patent the loop is not "integral" with the wire of which the band is made; but in the application in that case the same "wedging" and "pinching" of the cord is claimed as resulting from the peculiar form of the loop. Foote's specification says:

"The free end of the cord, being carried around the bundle and through the enlarged part of the holder (as the loop is termed in the case) is then drawn as tight as may be desired—to bind the grain—and when released the cord of itself slides down between the converging sides B B, and is *pinched* by them in proportion to the strain, and held with great firmness. The convergence of these sides must not be too rapid. The more nearly they approach to parallelism the stronger will they hold the cord. The drawing shows a proper convergence for the cord used.

"It will be seen that by this construction any tendency which the converging sides may have to separate or be forced apart when the cord is drawn in tightly between them (and which would be fatal to their successful operation) is prevented. The action of the cord on the overlapping ends tends to draw the converging sides more closely together as the strain is increased; and thus it is seen that however tightly the cord may be drawn, the fastening, with reference to the stiffness of the wire, will be secure and firm."

The Kilmer specification also describes the lower part of the loop as forming a "pinching angle" and takes pains to insist upon the particular form shown in the model and drawing, using this language: "The pressure of the bale on the band constantly tends to force the end $a'$ down to the angle $b$, pinching it semewhat, as indicated in Fig. 2, the angle being smaller than the wire of end $a'$."

This last expression is singularly like the following language of the applicant in this case when insisting upon the

importance of constructing the angle of the loop in exact
accordance with his description : "The condition that the
distance between the ends of the eyes at the wedging angle
must be a little less than the diameter of the inserted end
B, so that the grip or wedging can be very quickly gained,
is essential."

The United States Court of Appeals of the second circuit
in April, 1895, decided a contest between the holders of a
second patent of Kilmer, No. 372,375, issued November 1,
1887, and those of the patent of Frank B. Griswold before
referred to, No. 322,442, dated July 21, 1885. *Kilmer Manfg.
Co.* v. *J. W. and F. B. Griswold et al.,* 72 O. G. 1786.

The counsel for the complainant in the present cause ap-
peared in that case for the defendants and gained the case.

The Kilmer Company, under the specification of his sec-
ond patent of 1887, had claimed the exclusive right to use
a particular form of loop which added a *gripping* action to
the *wedging* action by a loop of the free end of the band ;
but the Griswolds (one of whom bears the same initials with
the complainant here) claimed that this particular form of
loop and the effect so described was comprehended in the
specification and patent of Frank B. Griswold of July 21,
1885, No. 322,442 ; that therefore the claim of the Kilmer
Company was untenable.

The language of this part of the opinion of the circuit
court is as follows :

"The specification of the Griswold patent, No. 322,442,
after describing the method of passing the end of the wire
P through the loop and the eye, says :

"'When the parts are thus connected, and any strain is
brought upon the tie union, such strain tends to close in the
side of the eye, E, so as to more firmly hold the wire P in
its clutch, and hence the latter need only be secured be-
yond the eye E by any means that will keep it where bent
towards the loop L, so as to rest on the bale or against itself.'

"With this patent in the prior art, it is difficult to see

how there could be patentable invention merely in adding a gripping action to the wedging action in a clasp which, in all its other details, was covered by the first Kilmer patent, and that addition is all that is described or claimed in this second Kilmer patent."

It is clear that the formation of the loops from the "integral wire" and the peculiar form of the loop with the gripping and wedging action were each known and in use at the time the present application was made. The combination of the two features in the same wire band intended to effect the identical function which was performed at that time by each of the existing devices does not constitute a patentable novelty.

Without going into a fuller discussion of the case and of our conclusions upon the ingenious arguments presented in behalf of the applicant, which would involve the repetition to a considerable extent of the careful opinion of the Commissioner, we agree that the decision below shall be *affirmed; and it is so ordered.*