# ARNOLD v. TYLER.

DECISION OF PATENT OFFICE, WHEN CONCLUSIVE; PATENTS; INTER-
    FERENCES; PRIORITY OF INVENTION; REASONABLE DILIGENCE.

1. In a case of interference appealed to this court, the decision of
    the Patent Office must stand unless the evidence shows beyond
    any reasonable doubt that the appellant was the first inventor;
    *following* Hisey v. Peters, 6 App. D. C. 68.
2. A delay of four years on the part of an inventor after conception
    of his invention, during which he does nothing towards put-
    ting his invention in practice, while others, during that time,
    have been diligent in the pursuit of the same idea and concep-
    tion, will be fatal to his claim for a patent as against those who
    have been diligent; *following* Porter v. Louden, 7 App. D. C.
    64.
3. And the fact that the inventor in such a case may have been mis-
    led by the advice of a patent solicitor, that his invention was
    not patentable, will not excuse the delay.

No. 61. Patent Appeals. Submitted January 21, 1897. Decided February 10, 1897.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Crosby & Gregory, Mr. Frederick P. Fish* and *Mr.
Frederick L. Emery* for the appellant.

*Mr. Frederick H. Betts, Mr. Edward S. Beach* and *Mr. Henry
H. Bates* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner
of Patents in a case of interference respecting an invention
in the construction of lasts for making shoes. The inven-
tion in the case which is in issue between the parties is
described by the several tribunals of the Patent Office as
follows:

"A last comprising a fore part and a heel part connected

by a pivot to enable said parts to have a relative movement for shortening the last, said pivot being located in or above the line of pressure between the toe and heel, tending to collapse said last."

Upon this issue the examiner of interferences awarded priority to the appellee, Tyler. His decision was reversed by the board of examiners-in-chief, who rendered their judgment in favor of the appellant, Arnold; but upon appeal to the Commissioner of Patents the latter sustained the examiner of interferences, reversed the decision of the board of examiners, and gave judgment of priority in favor of Tyler; and from this decision Arnold has appealed to this court.

In the manufacture of shoes the old wooden last of one solid piece of wood was found to be inconvenient on account of the difficulty of its removal from the shoe in the different processes to which the latter was required to be subjected and upon its completion. This difficulty, which was caused by the shrinkage of the leather of the shoe, it was sought at first to obviate by the construction of lasts composed of two or three parts closely fitted together, so as to form one compact last, the parts being a fore part, a heel part, and an intermediate upper part, of which the fore part and the heel part were permanently connected by a hinge of suitable construction, so located near the sole of the last as to permit the heel part to be swung upon it whenever it was desired to shorten the last and release it from the shoe. The intermediate upper part, which was of wedge shape, was utilized to keep the heel part in operative position when the last was in use. This construction was the subject-matter of a patent issued on January 1, 1889, to one George E. Smith.

Subsequently it was sought to dispense with the third intermediate part, which was apt to be forced out of place by the pressure upon it, and therefore to fail in effecting its purpose and to permit the last to collapse, and it was found that if the hinge or pivot connecting the fore part with the

heel part were placed on or above the line of pressure between the toe of the shoe and the middle of the heel which was the pressure that caused the last to collapse, and not below that line, as in the Smith patent, the pressure in question would be resisted, the last would not collapse under that pressure, notwithstanding that the intermediate wedge-shaped block was omitted, and yet the last could be effectively moved on its hinges or pivot, and thereby shortened whenever it was desired. This is the invention in controversy here, although there are some minor differences, probably unimportant here, between the device of Arnold and that of Tyler, and the question to be determined is which of these two was the first inventor of the substantial matter in issue. Neither party has received a patent. Both applications are yet pending, and are dependent upon the result of this contest.

Tyler was the first to file his application, which he did on June 9, 1893, and it seems to be conceded that he was the first to complete and perfect the invention in a mechanical and commercial sense and the first to give the invention to the public. He claims to have conceived the invention about October 2, 1892, to have communicated it to others about the same time, to have made a full-sized working last in accordance with his plan about October 4, 1892, and to have commenced the manufacture of such lasts about April 2, 1893, and thereafter to have continued such manufacture and sale upon a large scale.

Arnold's conception of the invention was about June, 1889, and consequently antedated that of Tyler by several years, and he claims to have disclosed his invention to others about July, 1889, to have had a full-sized last cut in accordance with his invention on November 5, 1889, which was immediately thereafter fitted with a hinge and used in the manufacture of shoes; but he admits that he had never made any model of the invention and that his invention had never been placed in general public use or on sale.

It is apparent, therefore, that the solution of the contro-
versy between the parties depends upon the determination
of the two questions, first, whether the action of Arnold in
1889 was a sufficient reduction of his invention to practice
and a completion of the invention so as to give him the
right to a patent; and, second, if not, whether he afterward
used due diligence in reducing his invention to practice and
applying for a patent.   His application, it may be remarked,
was not filed until December 28, 1893, and not until after
the Tyler lasts had been placed upon the market for sale
and some of them had been purchased and used in his busi-
ness by him.   It should be stated, however, that in or about
November, 1889, Arnold had consulted a patent attorney in
Boston for the purpose of procuring a patent for his inven-
tion, and had been advised by the attorney that, in view of
the Smith patent and two other patents to which he re-
ferred, the invention was not patentable, but that in September
of 1893, after the Tyler lasts had been exhibited to him in
August of that year, he took up his invention again and
made lasts in accordance with it.

  The question is further complicated by the fact that the
Arnold last of 1889 was used only for the purpose of trim-
ming shoes and was not calculated to withstand the very
great pressure that is brought to bear in another operation
in the manufacture of shoes when the upturned soles are
subjected to a pressure of as high as one thousand pounds
in what is known as the "leveling process," which pressure
is applied in a plane at right angles to the plane of the sole
and to the direction of the line of horizontal pressure here-
tofore mentioned, and to withstand which very great
strength is required in the last.   This strength the Tyler
last seems to have attained ; but it is contended that it
might readily be acquired in the Arnold last by the use
of a stronger hinge or pivot.

  We are reluctant to disturb the final decision of the Patent
Office in favor of the appellee, Tyler.   We think that in

this case the rule laid down in the case of *Hisey* v. *Peters*, 6 App. D. C. 68, following and applying the cases of *Coffin* v. *Ogden*, 18 Wall. 120, and *Morgan* v. *Daniels*, 153 U. S. 120, to the effect that in a case of interference, " the decision of the Patent Office must stand unless the evidence shows beyond any reasonable doubt that the appellant was the first inventor," should be applied.

Could it be justly or fairly said that the appellant in this case was beyond all reasonable doubt the first inventor of the device in controversy? Could it be fairly or justly said that he reduced his invention to practice in 1889, in contemplation of law, beyond all reasonable doubt? We think not. The utmost that can be said in this regard is that the claims of the parties are very evenly balanced, and inasmuch as they are so balanced it would not serve the purposes of justice to disregard the well established rule to which we have referred.

But apart from the question of reasonable doubt there was a delay of four years in this case on the part of Arnold during which he confessedly did nothing towards putting his invention in practice, and for this delay there is no adequate excuse. It is very true that he may have been, misled by the advice of the patent solicitor to whom he applied on the question of the patentability of the invention, although it is not certain that he fully explained his invention to the solicitor; but such mistake should not be allowed to militate against the just claims of others who have entered the same field of invention and have been diligent in the pursuit of their ideas and the realization of their conceptions. In the case of *Porter* v. *Louden*, 7 App. D. C. 64, 78, we held, affirming the Commissioner of Patents on that precise ground, that a delay of six years without any action taken in the matter of an alleged invention was fatal to a claim of priority dependent upon the connection of an earlier conception with a later reduction to practice. And under the circumstances of the present case, it is not

apparent why a delay of four years, during which another person was actively, honestly, and energetically in the field, should not be regarded as equally fatal when there has been no excuse of sickness or poverty, and when, on the contrary, there was ample reason for the prosecution of the invention, and there were ample means wherewith to defray the cost of prosecution.

It is needless to review the testimony in this 'case at length. It would serve no useful purpose. The case is one exceedingly proper for the application of the rules laid down in the cases of *Hisey* v. *Peters* and *Porter* v. *Louden,* and pursuant to the authority of those cases the decision of the acting Commissioner of Patents must be *affirmed.* *The clerk of the court will certify this opinion and the proceedings in this cause, according to law, to the Commissioner of Patents, to be entered of record in his office.*