## MIEHLE PRINTING PRESS & MFG. CO. et al. v. MILLER SAW-TRIMMER CO.

(District Court, W. D. Pennsylvania. October 25, 1923.)

No. 525.

1. Patents ⊂⇒114—Suit to adjudicate rights of owners of interfering patents in nature of suit to set aside judgment.

Suit in equity, under Rev. St. § 4918 (Comp. St. § 9463), to determine rights of owners of interfering patents, is not proceeding to review decisions of Patent Office and of Court of Appeals of District of Columbia, but is in nature of proceeding to set aside judgment, as to which burden is on plaintiff to establish case by clearest proof.

2. Patents ⊂⇒114—Decree of Court of Appeals of District of Columbia in interference proceeding presumed correct not set aside except on clearest proof.

In suit in equity under Rev. St. § 4918, for adjudication that complainant is entitled to patent, previous decree of Court of Appeals of District of Columbia in interference proceeding, over which court has general jurisdiction, is presumed correct, and will not be set aside except on clearest proof.

3. Patents ⊂⇒114—Evidence held insufficient to overcome presumption in favor of correctness of previous decree of Court of Appeals of District of Columbia in interference proceeding.

In suit, under Rev. St. § 4918, to determine rights of owners of interfering patents, evidence held insufficient to overcome presumption of correctness of previous decree of Court of Appeals of District of Columbia in interference proceeding.

4. Patents ⊂⇒328—Wells & Hunter patent, No. 1,363,200, claims 17–22, for automatic printing press feeder, held valid, and entitled to priority over Honigmann patent, No. 1,-074,720, claims 1, 2, 10, 21, 22.

Wells & Hunter patent No. 1,363,200, claims 17–22, for automatic mechanism for feeding blank sheets to, and removing printed sheets from, platen of printing press, held valid, and entitled to priority over Honigmann patent, No. 1,074,720, claims 1, 2, 10, 21, 22, covering same mechanism.

5. Patents ⊂⇒118—Patentee need not disclose accessories or auxiliary devices used in connection with invention.

Patentee need not disclose accessories or auxiliary devices used in connection with his invention but these may be supplied by those skilled in art to which patent relates, and disclosure sufficient to enable one skilled in art to manufacture and use invention is sufficient.

In Equity. Suit by the Miehle Printing Press & Manufacturing Company and another against the Miller Saw-Trimmer Company. Plaintiffs' bill and defendant's counterclaim dismissed.

Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., and Winter, Brown & Critchlow, of Pittsburgh, Pa., for plaintiffs.

Jones, Addington, Ames & Seibold, of Chicago, Ill., and Gordon & Smith, of Pittsburgh, Pa. (W. Clyde Jones and Robert Lewis Ames, both of Chicago, Ill., of counsel), for defendant.

THOMSON, District Judge. This bill in equity is filed under section 4918 of the Revised Statutes (Comp. St. § 9463), which, in substance, provides that, where there are interfering patents, any person interested in one of them may have relief against the interfering patentee by a suit in equity against the owners of the interfering patent; the court having power to declare either of the patents void in whole or in part, or inoperative. The Miehle Printing Press & Manufacturing Company, one of the plaintiffs, is the owner of Honigmann patent, No. 1,074,720, one of the interfering patents; while the defendant is the owner of the Wells & Hunter patent, No. 1,363,-200, the other interfering patent. Both patents relate to an automatic mechanism for feeding blank sheets to, and removing the printed sheets from, the platen of a platen printing press. Both patents contain five claims which are identical, being claims 1, 2, 10, 21, and 22 of the Honigmann patent, and claims 13 to 17, both inclusive, of the Wells & Hunter patent.

The bill seeks to have the said five claims of the Wells & Hunter patent adjudged invalid, while the defendant, by counterclaim, seeks to have adjudged invalid the said five claims of the Honigmann patent. Such is the issue between the parties. The case becomes less difficult of solution, because the issue is the same as that in the interference proceeding in the Patent Office at No. 38,-631, between the Honigmann patent and the application which resulted in the Wells & Hunter patent. The interference proceeding was carried through all the tribunals of the Patent Office, and on June 2, 1920, after 5 years of litigation, the Court of Appeals of the District of Columbia awarded priority of invention to Wells & Hunter. A petition for rehearing being denied, on December 21, 1920, Wells & Hunter were granted in their said patent, as against Honigmann, claims 13 to 17, inclusive, on the ground of priority of invention on the subject-matter of said claims.

In order that the questions for decision by this court may be more clearly understood, a statement of the somewhat complicated situation which was presented before the patent tribunals in the interference may be of value. The Wells & Hunter patent was issued upon application filed September 2, 1914, of Hunter and the estate of Wells, who was then deceased, being a renewal of Wells & Hunter application filed December 16, 1907, and allowed September 28, 1912.

Shortly after the renewal application was filed Wells & Hunter were required by the Patent Office either to adopt two claims which it suggested or disclaim the invention covered by those claims, calling their attention at the same time to the claims of the Honigmann patent. On December 14, 1914, Wells & Hunter added to their application claims 11 and 12, being the two claims suggested by the Patent Office, and which were claims 1 and 2 of an application of Edward Cheshire then pending in the Patent Office, which was then owned by Miller Saw-Trimmer Company. An interference being declared in December, 1914, between the Wells & Hunter and the Cheshire applications on said two claims, the issue was terminated by the purchase of the Wells & Hunter application by the Miller Saw-Trimmer Company. On March 26, 1915, Wells & Hunter added to their application claims 13 to 18, inclusive, which were identical with claims 1, 2, 4, 10, 21, and 22 of the Honigmann patent, which resulted in the declaration of interference between the Wells & Hunter application and the Honigmann patent; the issue being on said six claims. As a result of the interference claim 15 was canceled from the Wells & Hunter application, so that the remaining five claims were identical with those involved in the present suit.

Before the law examiner and the commissioner of interferences Honigmann sought to attack the action of the commissioner in reinstating the Wells & Hunter application after it had become abandoned for failure to prosecute within the statutory period of 1 year; and also that the disclosure on the drawings and specifications of the application did not give the right to make the six claims in issue. Each of these tribunals decided both questions adverse to Honigmann, and the examiner of interferences awarded priority of invention to Wells & Hunter. On a reargument, which was asked and obtained by Honigmann, three additional contentions were made: First, that Wells & Hunter were estopped to assert the claims in issue, because of a certain disclaimer filed by Wells & Hunter in their application on February 7, 1910; second, abandonment of the invention by Wells & Hunter, because the Honigmann patent had issued between the forfeiture of the Wells & Hunter application on March 28, 1913, and this renewal on September 2, 1914; and, third, laches, because they had not added the claims in issue for 17 months after the issue of the Honigmann patent. The examiner in chief found against Honigmann on the question of estoppel, but in his fa-

vor on the questions of abandonment and laches, and as a result awarded priority of invention to him. This decision being rendered upon the records alone, on the petition of Wells & Hunter alleging that the matter of abandonment under the statute "shall be considered as a question of fact" leave was granted to take testimony as to the facts regarding the forfeiture and renewal of their application.

Testimony was taken on both sides by depositions, and on this testimony a second hearing was had before the examiner of interferences. This tribunal adhered to its former ruling, holding that the Wells & Hunter testimony was not sufficient to overcome a presumption of abandonment between forfeiture and renewal of the application, and also that Wells & Hunter were barred from asserting their claims in issue, as they had not adopted them in their application for more than 1 year from the date of the issuance of the Honigmann patent. On appeal from this decision to the board of examiners in chief that tribunal held against Wells & Hunter on the question of abandonment; the other contentions being decided in their favor. Thus the decision as to priority of invention was in favor of Honigmann. On appeal by Wells & Hunter to the commissioner of patents in person the latter held that Wells & Hunter were entitled to make the claims of the issue so far as disclosure was concerned, and that their disclaimer was not a bar to asserting the claims; but held against them on the question of abandonment between forfeiture and renewal, and also that they were estopped to assert the claims, because they had not adopted them within a year prior to the date of the issuance of the Honigmann patent. From this decision awarding priority of invention to Honigmann on the last two questions an appeal was taken by Wells & Hunter to the Court of Appeals of the District of Columbia. Before this tribunal the right of Wells & Hunter to make the claims in view of their disclosure was conceded. It affirmed the commissioner's decision on the question of disclaimer; re-affirmed their own decision in Cutler v. Leonard, 31 App. D. C. 297, on the question of abandonment; and held that Wells & Hunter, having adopted the claims in issue within 2 years, were not guilty of laches. The commissioner of patents was therefore reversed and priority of invention awarded to Wells & Hunter.

[1, 2] Thus, after long litigation before the various tribunals of the Patent Office, in which apparently every legal question, as well as disputed questions of fact, were rais-

ed, Wells & Hunter prevailed in the Court of Appeals. Upon that tribunal, a court of general jurisdiction, Congress has conferred jurisdiction over interferences without any qualification whatever, and its final judgment would undoubtedly be conclusive on the parties here, except for the provisions of section 4918, under which this bill is filed. In this situation the courts in numerous decisions have conclusively established the character of the burden which the plaintiff has assumed and the measure of proof required to sustain it. A proceeding under section 4918 is not a proceeding to review the decisions of the Patent Office tribunals and the Court of Appeals, but has been held rather to be in the nature of a proceeding to set aside a judgment, and all the authorities agree that to do this plaintiff must establish his case by the clearest proof, and all doubts must be resolved against him. Many of the authorities hold that the plaintiff must establish his case beyond reasonable doubt. Various expressions have been used by the courts as expressing that clearness of proof necessary on the part of the plaintiff to justify the finding that the judgment of the Court of Appeals was erroneous. Perhaps the leading case on the subject is Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657. After referring to the great diversity of opinion of the several tribunals of the Patent Office, the court said: "Evidently, therefore, the question as to which was the prior inventor is not free from doubt. What, then, is the rule which should control the court in the determination of this case?"

After fully considering the question of the measure of proof, the Supreme Court used this language: "Upon principle and authority, therefore, it must be laid down as a rule that where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction. Tested by that rule the solution of this controversy is not difficult. Indeed, the variety of opinion expressed by the different officers who have examined this testimony is persuasive that the question of priority is doubtful, and if doubtful the decision of the Patent Office must control."

Again the court said: "There is other testimony on both sides of this controversy. It is unnecessary to notice it in detail. It is enough to say that the testimony as a whole is not of a character or sufficient to produce a clear conviction that the Patent Office made a mistake in awarding priority of invention to the defendant; and because of that fact, and because of the rule that controls suits of this kind in the courts, we reverse the judgment and remand the case, with instructions to dismiss the bill."

[3] The burden resting on the plaintiff being thus clearly established, it only remains to determine whether the plaintiff here has sustained the burden thus imposed. It is, of course, clear that the issue before the patent tribunals and before this court, namely, the priority of invention, is the same. Not only so, but the legal questions raised there and here, as well as the disputed questions of fact, are the same: On the part of the plaintiff in both tribunals, the issuance of the Honigmann patent, a matter of record; the testimony as to the alleged uses and sales of the Honigmann machines in 1912, 1913, and 1914; the proofs offered by plaintiff as to certain acts of the defendant, by which it contends that intervening rights were established on behalf of Honigmann, namely, the filing of the disclaimer by Wells & Hunter; the forfeiture of their application and the renewal 23 months after the date of the allowance; and the failure to copy the claims in issue from the Honigmann patent for the purpose of interference, for 17 months after the issuance of the Honigmann patent. As to the issuance of the Honigmann patent, the disclaimer, forfeiture, and renewal, the testimony there and here is identical. With reference to the proofs in respect to the alleged public uses and sales in 1912, 1913, and 1914 they are the same except for cumulative and contradictory testimony. The manufacture and sale of 12 machines in 1912 and their successful operation, and the manufacture of 50 machines by the Cowdrey Company and the sale of a portion of them, was testified to in the interference proceeding. The same witnesses which were called there are called here, and, in addition, the plaintiff has offered some corroborative or rather cumulative testimony relating to the alleged public uses and sales; seven additional witnesses being called. Defendant has offered contradictory testimony dealing with these alleged public uses and sales. A number of witnesses were called to show that the alleged orders of February, 1912, for 12 machines were not bona fide orders, but merely trial orders to enable Honigmann and others to finance the proposition, building 12 machines for trial and experi-

ment, and that these were not actual sales but rather trial sales for purposes of experimentation. Defendant also offers testimony as to the alleged successful operation of the 12 machines, claiming that these were unsatisfactory and experimental in character, and so unsuccessful under test in actual use that they were removed and discarded.

It is, of course, true, as claimed by the plaintiffs, that the judgment of the Court of Appeals in no way precludes this court from deciding this case according to its best judgment. This conclusion necessarily follows from the provisions of the act under which the bill is filed. But in reaching such conclusion the finding of the Court of Appeals is presumptively correct, and so persuasive that its conclusion should be controlling, unless the testimony is such, in character and amount, as carries to the mind of the court thorough conviction that their judgment was wrong.

[4] I am by no means so satisfied. I therefore find priority of invention in favor of the Wells & Hunter patent on the subject-matter of the claims in issue; and by reason thereof I find claims 1, 2, 10, 21, and 22 of the Honigmann patent to be void; and claims 17 to 22, both inclusive, of the Wells & Hunter patent valid. Plaintiffs' bill must therefore be dismissed, with costs.

But defendant, by way of counterclaim, not only attacks the validity of the five claims of the Honigmann patent in issue, because of priority of invention, and prays that they be decreed invalid, but in addition asserts, what was not suggested in the interference proceedings, that the Honigmann patent discloses an inoperative structure, and is hence invalid. The respects in which defendant contends that the disclosures of the Honigmann patent are so inadequate as to destroy its validity are: First, that the patent discloses a combing device initially separating the successive top sheets from the pile of stock for engagement by the grippers, and that such device, although used in its earlier feeders, was displaced by the suction separator in the later Honigmann feeders, which were built by the Cowdrey Machine Works under contract with the Honigmann Company; second, that the patent does not disclose means for retaining the sheets on the platen of the press as they are fed on the same by the mechanism; third, the patent does not disclose any timing means, that is, for preventing the driving pinion of the feeding mechanism being brought into mesh with the gear on the press, except when the parts of the feeder and the press are in proper synchronism.

The invention at issue, as defined by the claims in suit, is not concerned with any particular separating device for presenting the top of the sheet to the feeding mechanism, nor is it concerned with any particular means for receiving the sheets as they are delivered to the platen, nor does the invention comprehend any particular timing mechanism. This will appear from an examination of the claims at issue.

[5] It is not necessary that a patentee should disclose any accessories or auxiliary devices in connection with which his invention is used. These may be supplied by those skilled in the art to which the patent relates, and, if its disclosure is sufficient to enable one skilled in the art to manufacture and use the invention, the statutory requirements are complied with.

Without considering the evidence in detail, I do not think the objections urged are sufficient to invalidate the patent on the ground of failure to disclose an operative device. It follows that the defendant's counterclaim, so far as it relates to the inoperativeness of the device disclosed by plaintiffs' patent, will be dismissed.

A decree may be drawn in accordance with this opinion.