GOLD et al. v. GOLD.

(Circuit Court of Appeals, Seventh Circuit.    October 3, 1916.)

No. 2323.

1. PATENTS ⊛114—SUIT TO OBTAIN PATENT—EFFECT OF PATENT OFFICE DECISION.

While the decision of the Court of Appeals of the District of Columbia in an interference proceeding is not conclusive in a subsequent suit by the defeated applicant to obtain the issuance of a patent under Rev. St. § 4915 (Comp. St. 1913, § 9460), even though the evidence is the same, the District Court must be convinced that it furnishes no substantial support for the decree before it will be justified in overturning the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. ⊛114.]

2. PATENTS ⊛114—PATENT OFFICE DECISION.

This rule is applicable, whether the controversy bears on the credibility of witnesses and the weight of evidence, or on questions peculiar to patent laws, such as the construction and scope of the patent application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. ⊛114.]

3. PATENTS ⊛114—SUIT TO OBTAIN PATENT—ISSUES AND PROOF.

In a suit under Rev. St. § 4915, to obtain the issuance of a patent, the issue is not limited to the question of priority of invention between the parties, but to entitle complainant to a decree he must fully establish his right to the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. ⊛114.]

4. PATENTS ⊛328—SUIT TO OBTAIN PATENT—HOSE COUPLER.

Complainant in a suit under Rev. St. § 4915, held not to have established his right to a patent to the invention covered by the Gold patent, No. 948,667, for a coupler for hose for connecting the steam-heating pipes of railway cars.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Edward E. Gold against Egbert H. Gold and the Chicago Car Heating Company. Decree for complainant, and defendants appeal. Reversed.

Otto R. Barnett, of Chicago, Ill., for appellants.

Arthur C. Fraser and William A. Redding, both of New York City, for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. Appellee brought suit under R. S. § 4915 (Comp. St. 1913, § 9460), to obtain letters patent. The invention is for an improvement upon the "Sewall" or straight port coupler for connecting the lengths of rubber hose for steam-heating pipes of railway cars, so that, while not preventing their unlocking when the cars separate, it shall prevent accidental uncoupling. A lock thus affording sufficient resistance to prevent accidental uncoupling is called an impositive lock.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The District Court not only granted the prayer of the bill, but it also declared appellant Gold's patent as to the five claims in question void. Furthermore, it annulled his patent in respect to three other claims, as to which priority had been granted him in the Patent Office, by an order which, because unappealed, made this matter res adjudicata as between the parties thereto.

Appellant Gold was the senior applicant. He filed in April, 1902; appellee, in June, 1903. Before interference proceedings were begun, certain of this appellant's claims not involved in the interference, and which had been rejected on the ground that his application afforded no basis for claiming an impositive lock, were allowed on ex parte appeal; one examiner in chief dissenting. Subsequently, after he had had access to appellee's files through an interference proceeding, and had added the new claims, the interference proceedings, which resulted in the decree herein attacked, were instituted as to these eight claims. Appellee then moved to dissolve the interference, on the ground that appellant Gold's application did not cover the invention of these claims. This motion was denied by the examiner, and on appeal the examiners in chief left the question open to be determined on the evidence at the final hearing.

On final hearing of the interference, the examiner awarded priority to appellant Gold on three claims, but to appellee on the five claims here in issue. The decision, however, turned on another point than that of the scope of the application. On appeal, the majority of the examiners in chief held that appellant Gold had no right to claim the impositive lock under his original application, and for that reason affirmed as to the five claims. For the same reason, the Commissioner of Patents again affirmed their decision. In each instance, appellant was awarded priority as to the three other claims. As to these three, no further appeal was taken, but on appeal as to the five claims the Court of Appeals of the District of Columbia reversed the Commissioner.

[1] These claims were held to be covered by the application and priority was awarded to appellant Gold. 34 App. D. C. 229. Thereupon letters patent No. 948,667 were granted to him on February 8, 1910. But for section 4915, this determination would be res adjudicata. Under this act, however, the losing party may renew the contest and endeavor to establish his right to a patent de novo. If, in addition to the evidence presented in the interference proceedings, new and additional evidence be given in court, due weight must be accorded thereto. But we cannot assent to appellants' argument that, if the evidence in court and in the interference proceedings is identical, the decision in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, makes the final decision in the interference proceedings conclusive, and requires a dismissal of the bill without any consideration of the evidence; for, though some of the statements in the opinion may support this view, the action of the court in this and in subsequent cases in discussing the evidence negatives such an interpretation of the duty of the court.

The final decision in the interference proceedings, while not conclusive, is nevertheless of the utmost importance. The Court of Appeals acts therein as the highest patent tribunal; like the Patent Office officials, its members acquire a wide experience in these intricate questions, the solution of which demands expert knowledge and training. Moreover, unlike the ex parte grant of patents, interference proceedings are contested between parties in interest, and, while conducted by administrative officials, are quasi judicial in their nature.

The District Court, in this statutory proceeding to review the decree rendered in a contested case by a court acting as the final expert administrative-governmental department, exercises a jurisdiction somewhat analogous to, though broader than, that exercised by a court of equity on a bill to set aside a judgment at law—broader, in that the evidence may go to the merits of the original controversy; but, though a re-examination of the evidence is not precluded, the court must be thoroughly convinced that it furnishes no substantial support whatever for the decree before the conclusions reached by the Court of Appeals of the District of Columbia will be overturned.

[2] And while this seems obvious enough, when the re-examination involves merely a weighing of the evidence and a consideration of the credibility of witnesses, as in the ordinary priority of invention cases, it is equally true when questions peculiar to the patent law, such as the construction and scope of the patent application, are involved. For it is just such questions that the administrative tribunal is pre-eminently qualified to solve. Even then, of course, the court is not absolved from the duty of examination; but, unless it be perfectly clear that the final expert administrative body, the Court of Appeals, erred, relief should not be granted under section 4915. On a careful consideration of the record, we hold that the sound construction of the application is not free from doubt. The varying conclusions by the several administrative officials would alone raise this doubt; but, far from finding the decree of the Court of Appeals without support in the record, if it were essential for us to determine the question as an original proposition, we should agree with the conclusions therein reached for the reasons given in the opinion rendered by that court.

[3] But even a contrary conclusion on the construction of appellant Gold's patent application would not necessarily result in a decree in favor of appellee. For in the interference proceedings, if it be finally held that one of two applicants covers, but the other does not cover, the invention in his application, the former must be successful, not necessarily because of any inherent right, but because of the complete absence of right in the losing party. In other words, the issue in the interference proceedings is priority as between the inventions covered by the two applications; if one fails to cover it, the other is necessarily successful. But, as the Commissioner of Patents pointed out, the decision on the interference issue does not determine the right to the patent. In the further ex parte consideration of the successful party's application, actual priority of invention must be established. An earlier reduction to practice, whether by a third person or by the unsuccessful contestant in the interference case, will prevent.

the grant of a patent. And so, too, in a case under section 4915; the issue is not limited to priority of the invention covered by the two applications. To obtain a decree for a patent, the complainant must fully establish his right thereto.

[4] But in this case the Court of Appeals of the District of Columbia has found that appellant Gold made and publicly exhibited a device embodying the invention a year before appellee had reduced his invention to practice by filing his application and that appellee saw and examined the device at that time; in other words, that irrespective of the application, appellant Gold, and not appellee, was the inventor of the device covered by claims 1 to 5. If this finding be correct, then appellee would under no circumstances be entitled to letters patent.

We deem it unnecessary to review the evidence; for, while it is conflicting, that offered by appellee tending to support his claim of conception and communication to appellant Gold in 1892, and reduction to practice in 1901, or early in 1902, as well as his charge, both that the device exhibited by appellant in June, 1902, was merely a subsequently abandoned experiment, and that it did not embody the essential feature of the invention, yet, in the light of appellant Gold's contradictory testimony on each of these points, we cannot hold that the Court of Appeals was clearly wrong in its conclusions or that they lack substantial support in the record. On the contrary, any conclusion other than that reached by the Court of Appeals, namely, that appellee's reduction to practice cannot be carried back of his filing date, and that appellant Gold fully embodied the invention in an operative device in June, 1902, and thereby reduced it to practice before appellee, even if the application of April, 1902, failed to disclose the invention of these claims, would be subject to the gravest doubt.

It follows, therefore, that the decree must be reversed, and the cause remanded, with directions to dismiss the bill.