GOLD et al. v. NEWTON, Commissioner of Patents.

(Circuit Court of Appeals, Second Circuit.    November 13, 1918.)

No. 45.

PATENTS ⟨Key⟩114—REFUSAL BY PATENT OFFICE—REMEDY IN EQUITY.

Where the Patent Office denied a patent to an applicant, and its decision was affirmed by the Court of Appeals of the District of Columbia, *held* that, in a suit under Rev. St. § 4915 (Comp. St. § 9460), begun in federal District Court, the Circuit Court of Appeals will not render judgment requiring the Commissioner of Patents to issue patent, where there was diversity of opinion between its members as to whether patent should issue, and there was no testimony materially changing the record before the Court of Appeals of the District of Columbia.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Edward E. Gold and another against James T. Newton, as Commissioner of Patents, substituted for Thomas Ewing, as Commissioner of Patents. From a decree for defendant, complainants appeal. Affirmed.

Appeal from a decree in equity entered in the District Court for the Southern District of New York, dismissing a bill originally brought by plaintiffs against Hon. Thomas Ewing, then Commissioner of Patents, under the provisions of section 4915, U. S. Revised Statutes (Comp. St. § 9460), and continued against his successor in office, Mr. Newton.

Suit was brought in the district of Mr. Ewing's residence by his consent. Barrett Co. v. Ewing, 242 Fed. 506, 155 C. C. A. 282. The object of action is to obtain decree that plaintiff Edward E. Gold is entitled to a patent, containing eight claims, of which the first and second are broad and vital, and are as follows:

"1. In a car heating apparatus, the combination with a train pipe and a radiator in the car with an intervening admission valve, and an outlet valve at the discharge from the radiator, of thermostatic means for controlling said valves, and manually operated means for rendering either valve inoperative whereby the heating system is convertible at will into an admission pipe pressure system or an atmospheric pressure system.

"2. In a car heating apparatus, the combination with a train pipe and a radiator in the car with an intervening admission valve, and an outlet valve at the discharge from the radiator, of a single thermostat with connections for controlling either of said valves alone, and manually operated means for determining which valve shall be controlled by said thermostatic means, whereby the heating system is convertible at will into an admission pipe pressure system or an atmospheric pressure system."

Gold filed his application in 1904, since which time the subject-matter of this suit has been continuously fought over both in the Patent Office and the courts. The contest has been triangular, between the applicant, Edward E. Gold, one Egbert H. Gold, and a succession of Commissioners of Patents.

The questions litigated have been:

(1) Is any patentable invention over the prior art disclosed by the application and defined by (e. g.) the above quoted claims?

(2) If such invention exists, is Edward or Egbert Gold entitled to priority?

The history of litigation down to 1909 is related in Gold v. Gold, 34 App.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

D. C. 229, where the Commissioner's decision awarding priority to Edward was upheld. No judgment as to patentability was necessary, and none was made.

Thereupon in 1910 Egbert sued both Edward Gold and the Commissioner, under R. S. § 4915 (Comp. St. § 9460)—Gold v. Gold (C. C.) 181 Fed. 544, affirmed 187 Fed. 273, 109 C. C. A. 615—and was defeated again, without, however, touching the matter now before this court.

Meantime the plaintiff Edward was involved in a new interference with one Fulton, while Egbert proceeded ex parte in the office with his attempt to get a patent that may fairly be called something as near to Edward's disclosures as could be suggested without interfering.

He was met by a reference to Weber's patent, 403,162, and rejected, whereupon, in 1912, he appealed to the Court of Appeals of the District, which held with the Commissioner that "an apparatus built in accordance" with Weber's disclosure is "operable at atmospheric pressure or at practically steam admission pipe pressure at will, and that such capability is an inherent characteristic" of Weber. In re Gold, 38 App. D. C. 544. To this proceeding Edward Gold was no party; he was involved in the Fulton interference.

That interference was dissolved on the ground that the single claim in contest was unpatentable over Weber, whereupon Edward amended his specification by adding what is really an argument for differentiating Weber, and changed the language of his claims. The application took its present shape in 1913, and was later finally rejected, whereupon this plaintiff appealed to the District Court of Appeals, which had already, on Egbert's appeal, found in effect that the substantial thing which both the Golds wanted to do might be done with an apparatus made in accord with Weber's disclosure. The rejection of Edward on Weber, was affirmed in 1916. In re Gold, 45 App. D. C. 294.

This present action was then brought, and bill dismissed by L. Hand, J., because, although plaintiff had made "a discovery of great value," to be patentable, it must be "incorporated into a machine which as a juxtaposition of related parts is new in the art."

But Weber had shown an apparatus—or machine—that "can be made to work"; therefore, especially in an action of this nature, invention could not be so positively asserted as to lead (substantially) to a reversal of repeated findings by authorities both executive and judicial in the District of Columbia. Consequently the bill was dismissed and plaintiffs took this appeal.

William A. Redding and Arthur C. Fraser, both of New York City, for appellants.

Francis G. Caffey, of New York City (L. D. Underwood, of Washington, D. C., of counsel), for appellee.

Otto R. Barnett, of Chicago, Ill., amicus curiæ.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). This record reveals no difference of opinion as to the nature of plaintiff's thought, its application to or embodiment in a useful mechanical contrivance, and his priority in time is no longer open to question.

It was well known that railway cars could be and had been heated by steam piped from the engine; prior to Gold there were two leading and contrasted systems in actual use. What plaintiff calls the "high pressure" appliance received steam at train pipe pressure into the car pipes, which had an outlet thermostatically closed when the condensation water was expelled and the hot steam took effect. Then the cars were heated by direct steam as hot as the engine supplied it; when the car got too hot, the steam was turned off. This is the "steam admission pipe pressure" referred to by the Court of Appeals (ut supra).

The second or so-called "vapor system," throttled the train pipe pressure at the inlet valve, and reduced it nearly to zero. The outlet is open, containing, however, a thermostat which regulates or maintains the inlet valve at the desired approximate closure. This is the "atmospheric pressure" apparatus above referred to by the Court of Appeals.

Each of these heating methods has advantages, and drawbacks. The high pressure system makes the car warm with a small radiating surface; the vapor system gives a mild heat grateful in cool weather, but for a really cold winter day requires a great radiating surface. Consequently with one apparatus the car is often overheated, and with the other it is at times too cold, unless a great extra weight of pipe is carried, and required perhaps only a dozen days a year.

Gold shows and claims as his invention the combination in a car-heating apparatus of train pipe, radiator, admission and outlet valves, with "thermostatic means for controlling said valves," to the end that the same pipes, etc., may by the turn of a handle be changed from one system to the other, according to the weather; and he was the first man to suggest this or do it, as has been held by the Office and the appellate court of the District of Columbia.

But plaintiff Gold was refused a patent on the sole ground that what Weber disclosed could without any substantial change of construction, and without any additions or changes that could be called improvements, be made to do what Gold discloses and claims as his invention.

The Patent Office authorities went into this matter with such care that one of the examiners was deputed to attend and witness experiments with a device said to have been made in compliance with Weber's specification and drawing. In the opinion of that examiner the machine was fairly made and fairly operated, and the experiment proved "that it was an inherent characteristic of [Weber's] apparatus that it could be converted"—i. e., changed at will—from a high pressure to a vapor supply of steam.

On this evidence the patent was rejected, because to grant it would be to patent a double use. And to this view several Commissioners and the Court of Appeals of the District of Columbia have adhered, although it seems to have been shown in the Office proceedings, and therefore to the appellate court, that both Weber's patent and Weber himself had ended their lives without ever being heard of in the art of heating railway cars, without the patented device ever receiving commercial development, and although the exact apparatus described and claimed by Weber could never, for mechanical reasons, be used in or about railway cars. It remains doubtful to what useful purpose Weber's patented apparatus could be put. The probability is that it was intended to be used in the steam heating of houses.

It is much pressed upon us that this suit is an original action, in which evidence has been adduced not previously shown either to the Commissioner or to the appellate court of the District of Columbia (Greenwood v. Dover, 194 Fed. 91, 114 C. C. A. 169; General Electric Co. v. Steinberger, 214 Fed. at 784, 131 C. C. A. 193), and it is

not an appeal from the Patent Office (Butterworth v. Hoe, 112 U. S. 61, 5 Sup. Ct. 25, 28 L. Ed. 656).

In form this is true, but in substance we do not think it is. This record contains no reason for granting Gold a patent that was not shown to the Commissioners, and no reason why he should not have one except the Weber reference. We do not overlook the fact that, since the experiments above referred to, plaintiffs have made another embodiment of Weber, and conducted experiments with it, in our judgment with substantially the same results. Perhaps the second embodiment did not work quite as well as the first, but the principle is plain in both. We find the fact to be that the first Weber embodiment worked better than the second, because the exact limits of adjustment in order to produce the convertible feature were permanently indicated on the device as first constructed—something not shown or suggested in Weber's disclosure. This we regard as unimportant.

On these facts a majority of this court are of the same opinion as the court below—that Gold made "a discovery, and a discovery of great value." That majority also thinks that, if the language of Potts v. Creager, 155 U. S. 608, 15 Sup. Ct. 194, 39 L. Ed. 275, can ever be held to justify finding patentable invention in the use of an old device to produce a new result, this is an instance of the applicability of that rule. The same majority are of the opinion that Weber's device "was not designed by its maker, nor adapted nor actually used, for the performance of the functions of the patent" now sought by Gold. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

On the other hand, we are all of opinion that the fact of difference among ourselves is reason the more for adhering to the rule of Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, and especially so in a case where we have no testimony materially changing the record that was before (and indeed repeatedly before) the court authorized equally with ourselves (though in a somewhat different manner) to deal with questions of this kind, viz. the Court of Appeals of the District of Columbia.

In respect of actions like this, solely against the Commissioner, the jurisdiction still existing under R. S. § 4915 (Comp. St. § 9460), is, to say the least, a singularity in law making. While the statute exists, jurisdiction must be exercised; but we entirely concur with the court below that, in order to advise or direct the Commissioner to issue a patent which he has refused and had his refusal approved by the District Court of Appeals, there must be introduced substantially new and persuasive testimony, not adduced before the tribunals with which we are invited to differ. Here we have nothing but an argument, persuasive to a majority only of this court, and even that argument seems to have been the same throughout this long and tangled litigation.

Further, a court appealed to under section 4915 must by the evidence shown it, whether new or old, be very fully and amply persuaded of plaintiff's merits before granting relief. The fact of our disagreement on the question of invention leads to a unanimous belief that there exists no such certainty of right as should lead, not only to the

attempted upsetting of so long a line of considered decisions, but to the present granting of a basic and fundamental patent, which for the next 17 years would dominate an art that has now obviously advanced beyond anything reduced to practice by Gold at or about the time he framed his disclosure.

We have not overlooked the difficult position produced for this plaintiff by the course of litigation in Washington. It seems quite true that both the Golds were in substance trying to get patent protection for the same thing. When priority was awarded to this plaintiff (Edward), Egbert continued his application ex parte, proposing claims expressed in terms of process, but covering the same thought that Edward has persistently expressed in terms of apparatus—e. g., in the proposed claims first above quoted.

It may be true, as argued, that if Egbert's claims had been allowed after he had lost his demand for priority he would have been compelled to pay tribute to the fundamental claims advanced by Edward, and that therefore he sought to create a precedent against himself in the courts of the District by taking an appeal, which, if successful, would still have left him an infringer, had Edward also succeeded. But when Egbert lost in the appellate tribunal, as he did, he had rendered it impossible, without new evidence or an overruling of solemn judgment once given, for anybody else to get what he (Egbert) had failed to obtain. It may also be true that this was the reason why Commissioner Ewing gave that consent which is the only excuse for jurisdiction in this circuit.

Even if we admit all the foregoing, we remain of opinion that the decent and seemly administration of the law does not permit a court of (in this matter) substantially co-ordinate jurisdiction to (in effect) overrule or disregard all that has hitherto been done, unless and except this whole court is very sure of the matter after considering evidence that is not only persuasive but new.

Not being able to arrive at that degree of certainty, the decree appealed from is affirmed, without costs.