## LOUGHRAN et al. v. QUAKER CITY CHOCOLATE & CONFECTIONERY CO., Inc.

(District Court, E. D. Pennsylvania. February 15, 1923.)

No. 2493.

I. Trade-marks and trade-names and unfair competition ⊚⟾43—Decision of courts of District of Columbia denying registration entitled to great weight.

In a suit under Rev. St. § 4915 (Comp. St. § 9460), to compel issuance of a certificate of registration of a trade-mark, the judgment on appeal of the Court of Appeals of the District of Columbia, specially constituted to deal with such questions, is entitled to more than usual deference and should be followed if its decision can be accepted.

2. Trade-marks and trade-names and unfair competition ⊚⟾53—Do not give monopoly.

A trade-mark does not give a monopoly, but only the right to the proprietor to use it to distinguish his goods, so he may have full benefit of whatever good reputation may have earned for him, and to protection against the palming off of the goods of another on customers as his.

3. Trade-marks and trade-names and unfair competition ⊚⟾43—Registration of "Quaker City" held not ground for refusing registration of "Quaker Maid."

Prior registration of the name "Quaker City" as a trade-mark for candies held not a valid ground for refusing registration of the name "Quaker Maid" by another manufacturer, the result of which would be to give the first a practical monopoly in the use of the word "Quaker."

In Equity. Suit by Christine M. Loughran and another against the Quaker City Chocolate & Confectionery Company, Inc. Trial hearing on bill, answer, and proofs. Decree for complainants.

See, also, 281 Fed. 186.

Joshua R. H. Potts, of Chicago, Ill., George B. Parkinson, of Philadelphia, Pa., and Brayton G. Richards, of Chicago, Ill., for plaintiffs.

Howson & Howson, Charles H. Howson, and Kennard N. Ware, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This cause as presented is one in which the mind cannot rest with satisfaction upon any conclusion which can be reached. This is because the real controversy between the parties has not as yet been brought before a court. The present struggle is for position. The effort of the defendant is to retain a tactical ad-

⊚⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vantage of position from which it can fight the real battle. That battle, if it is ever fought, will be waged over the question of whether either of the parties has trespassed upon the rights of the other. If that question were now before us, the road to a satisfactory answer could be followed. If, indeed, in this preliminary skirmish, the question were whether the defendant should be given the tactical advantage sought, this road would not be obstructed. The defendant, however, has already been given this advantage of position, and the question is whether the plaintiff has the right to the aid of the law in driving the defendant out, or to be given as good a defensive position from which the impending battle may be fought.

[1] The battle to come is between two trade-marks. The defendant has not only been allowed registration of its trade-mark, but the plaintiff has been denied her claimed right to a like registration. The present bill is filed under R. S. 4915 (Comp. St. § 9460). The proceeding is thus in effect, although not in form, appellate. It is appellate in effect because under R. S. 4915, the decree of any District Court, if it becomes final, may work a reversal of a decree of the court in the District of Columbia, which may have denied the allowance of registration. More than this, not only has the court, whose decree worked this reversal, no appellate authority over the court which denied the registration, but the latter court is specially constituted and fitted by training and experience to deal with the subject-matter. There is demanded in consequence more than the usual deference, due to a ruling made by another court. The judicial power deals not merely with legal rights but with the policies of the law. These policies are real things. One is to avoid all conflicts of judicial opinion. Appellate courts are constituted to minimize this recognized evil. When a question has once been squarely raised and decided by one court, for the sake of conformity a second court, before which the same question is raised, should make a like ruling, if the first ruling can be accepted. The fact, if it be the fact, that without the first ruling the second might or would have been different, is not controlling. Judicial judgments, however, are not wholly of volition. They call for the display of the quality of intellectual honesty, and imply that they express the real convictions of the mind which renders them upon the whole situation, including, of course, the earlier ruling. The guide then to what should be done is found in the answer to the other question of whether the first judgment can be conscientiously accepted. If it can be, it should be. What reason thus indicates all the authorities confirm. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657; Greenwood v. Dover, 194 Fed. 91, 114 C. C. A. 169; Old Lexington Club Distillery Co. v. Kentucky Distilleries & Warehouse Co. (D. C.) 234 Fed. 464; Gold v. Gold, 237 Fed. 84, 150 C. C. A. 286; Gold v. Newton, 254 Fed. 824, 166 C. C. A. 270.

## The Question Presented.

It is to be noted that the question before the court for the District of Columbia and the question before us was and is a much narrower question than that discussed at the argument. It is not the judicial

question of whether the plaintiff has a right to the use of the trade-mark which she claims, nor even whether her trade-mark conflicts with that of the defendant. The question is the administrative one of whether, in view of the fact that the defendant's trade-mark has been registered, it is wise to allow the registration of another so similar as that confusion is likely to result. The ruling is analogous to that of the authority to grant letters patent to corporations. If letters patent are applied for granting incorporation by a name so like that of an existing corporation that confusion is likely to result, the authority passing upon the question is in the exercise of a wise discretion in refusing to be a party to creating such an opportunity for deception. This does not imply a finding that the first corporation has the exclusive right to a name within reach of the choice of any one, although this is in a substantial sense a consequence of the refusal to sanction a second incorporation by the same name. It is easy to get in line with this thought and in accord with the ruling made when viewed from this point of view. The whole question is whether this is, under the facts of the instant case, the right view point. This takes us to the facts.

### The Fact Situation.

There is no controversy over the facts. Long before either of the parties before us had any rights in the premises, a man known to this record as Doniphan adopted and used a trade-mark, which he also had duly registered. He was a manufacturer and dealer in candies and confections, which he sold under the trade-name of the "Quaker Brand," in conjunction with the figure of a man arrayed in what passed for the well-known Quaker garb. It was not until 1893 that the defendant first adopted and used, as the name under which it marketed its candies, that of "The Quaker City," with the figure of a man on a gold seal. This, after 10 years' use, was registered on August 7, 1906; the applicant being then able to comply with the condition upon which words carrying a geographical designation might be registered. About 1912 the plaintiff adopted and began the use of her trade-mark, consisting of the words "Quaker Maid," with a girl clad as a Quaker maiden was supposed to be clothed. Application was made to have this trade-mark registered. Up to this time none of the persons concerned knew of any claim to a trade-mark by either of the others. The above-mentioned "Quaker Brand" trade-mark then came to light. The owner of this first trade-mark had gone out of business and abandoned both his common-law and statutory rights and thus passed from consideration. The application of the plaintiff was then passed for publication. This brought the defendant into opposition. The examiner, to whom the application of the plaintiff was referred, refused it on the ground, already indicated, that the two trade-marks were likely to cause confusion. The Commissioner took the other view and allowed registration. An appeal was taken to the proper court of the District of Columbia, and the ruling of the Commissioner was reversed and the application for registration rejected. Plaintiff thereupon filed the present bill. It might be added that up to the present time the plain-

tiff has done an exclusively retail trade and the defendant a whole-sale. Either, however, may at any time enter upon the field of the other.

## The Pleadings.

The bill prays for a decree allowing the registration applied for by the plaintiff, and also for a decree that the defendant's certificate of registration be surrendered and marked canceled. The defendant moved to dismiss that part of the bill on which this second prayer was based. This motion was denied, the question raised being reserved to be ruled as a trial question. The issues indicated were then raised by answer.

## Discussion.

[2] At the root of the discussion lies the general subject of trade-mark rights. Patents, copyrights, and trade-marks excite two deeply seated feelings. One is the feeling of any one who has originated anything of his right to claim an exclusive property in it and to the trade growing out of it. The other is a hatred of monopoly. The latter feeling gives way to the former so far as to grant limited monopolies through patents and copyrights. This is a concession made for the general good aptly expressed in the constitutional phrase. The purchasing public regards this as the concession of a privilege; inventors and authors look upon it as a right limited only as the price exacted for the aid of the law in enforcing it. Mere dealers in commodities are prone to think themselves entitled to a like monopoly unlimited in time. This is a mistake. The only right they have is their right to sell their goods as such and to protection against the goods of another being palmed off upon their customers as theirs. To aid them in the assertion of this right they are permitted to mark their goods so as to identify and designate them and to name them as their own. Some words are merely the names of things. Other words, although used as names, imply the existence of certain qualities or characteristics of excellence or otherwise. The sound or sight of a word often brings with it by suggestion a train of ideas. One of the masters in literature has called such words "polarized." The word "Quaker" is of this class. Members of the Society of Friends have the reputation of putting conscience and honesty into all that they do or make. Any food product which is really Quaker-made carries with it the assertion that it is wholesome, that its ingredients are genuine, and that it has been prepared by the use of methods of cleanliness. When a manufacturer of candy puts out his product under such a name, he is advertising its excellence. The aim of all advertising is pyschological effect. To give any one a monopoly of the use of a word of this kind is to give him the exclusive right to so advertise his product. There is no purpose in the trade-mark law to confer any such right upon him. There is much of the same significance in some geographical names. A city may enjoy a reputation for excellence in some kind of product. To assert that a product is made in such a city is an assertion of its merits, and the exclusive right to so advertise it transfers to the dealer the benefit of the reputation earned by the city. A trade-mark gives no such right. There are trade-marks and registered trade-marks. There

is no real distinction between them and no difference except such as flow from the fact of registration. The method of proof differs; the tribunal which passes upon the right may differ, and the form of relief may differ. The essential right, however, is the same. It is, as already stated, limited to the right of the owner of the trade-mark to sell what is his as his so that he may reap the full advantage of whatever a good reputation has earned for him. Beyond this it does not go.

As before indicated, there have already been three rulings upon the question before us; two one way, and one the other. The line of thought leading to the final ruling in the registration proceedings, as has been said, is clear enough, and of itself has our full concurrence. It may well be that the other viewpoint is an anticipation. It has, however, two practical relations to the narrow question before us. The thought followed in the ruling made begins with the proneness to shorten names in common speech. There is not so much danger of confusion between "Quaker City" and "Quaker Maid." If, however, in common use they are shortened to Quaker, as we agree they are likely to be, more or less confusion will result. This is a reason, and by itself a good reason, for refusing to register one trade-mark so nearly like one already registered. The difficulty, however, is that, whether so intended or not, the effect of the ruling, if it has any effect, is to give to the defendant the exclusive use of the word "Quaker" and to permit it alone to advertise Quaker-made candies. The objection is akin to that of giving the right to the use of the words "Pure Sugar Candies," or "Cuban Sugar" or "Cane Sugar." Indeed, unless this right is asserted, there is no danger of confusion to be avoided. If the answer is that no such right is conferred, then there is no more risk of confusion in allowing the registration than in denying it.

[3] This brings us to the view from which we have not been able to get away, that it is better to risk the danger of a confusion which may not be escaped in any event than to attempt to escape it by the certainty of giving to the defendant more than that to which it has a right. If "Quaker Maid" conflicts with "Quaker City," the latter conflicted with "Quaker Brand." If registration could be refused both parties, the conclusion would be acceptable. That to which we cannot reconcile our mind is to grant it to the one and refuse the other.

The conclusion is that the prayer for the allowance of the application of the plaintiff to register her trade-mark should be granted. The other prayer for the cancellation of defendant's trade-mark, although reserved to be determined as a trial question, was reserved with the plain intimation that this court was without jurisdiction to interfere with the Patent office disposition made of applications which had been granted.

To this opinion we adhere, and this prayer should be denied. We do not regard Baldwin v. Howard, 256 U. S. 35, 41 Sup. Ct. 405, 65 L. Ed. 816, as in conflict with this ruling, but, on the contrary, as in line with it.

To give definiteness of date to the decree made, none is now entered, but either party has leave to submit a formal decree in accordance herewith, with costs to plaintiff.