## LOUGHRAN et al. v. QUAKER CITY CHOCOLATE-& CONFECTIONERY CO., Inc.

## QUAKER CITY CHOCOLATE & CONFECTIONERY CO., Inc., v. LOUGHRAN et al.

(Circuit Court of Appeals, Third Circuit. February 23, 1924.)

Nos. 3000, 3001.

1. **Trade-marks and trade-names and unfair competition ⬦44—District Court has jurisdiction to adjudge applicant entitled to registration of trade-mark.**

Rev. St. § 4915 (Comp. St. § 9460), giving applicant for patent a remedy by bill in equity in the District Court on refusal of application by Commissioner of Patents, or by the Court of Appeals of the District of Columbia, *held* applicable to registration of trade-marks.

2. **Trade-marks and trade-names and unfair competition ⬦44—Question of plaintiff's right to registration of trade-mark on bill in District Court determined on merits.**

While a bill in equity in the District Court, under Rev. St. § 4915 (Comp. St. § 9460), by unsuccessful applicant for registration of trade-mark, is in effect a suit to set aside a judgment of the Court of·Appeals of the District of Columbia within its special jurisdiction, it is authorized by statute, and must be considered and determined on its merits.

3. **Trade-marks and trade-names and unfair competition ⬦44—Unsuccessful applicant for registration must overcome decision in Court of Appeals of District of Columbia by convincing evidence.**

In suit in the District Court, under Rev. St. § 4915 (Comp. St. § 9460), by unsuccessful applicant for registration of trade-mark, the plaintiff, to prevail, cannot rely on a mere preponderance of evidence, but must overcome the decision in the Court of Appeals of the District of Columbia by testimony which in character and amount brings thorough conviction.

4. **Trade-marks and trade-names and unfair competition ⬦44—District Court, in suit for registration, will not concern itself with validity of other trade-marks.**

In suit under Rev. St. § 4915 (Comp. St. § 9460), by an unsuccessful applicant for registration of trade-mark, the court is not concerned with the validity of the registration of another's trade-mark, and will not cancel such other trade-mark, but will merely pass on the question whether the plaintiff is entitled to registration of his trade-mark, notwithstanding such other trade-mark.

5. **Trade-marks and trade-names and unfair competition ⬦43—Candy trade-mark, "Quaker Maid," held entitled to registration, notwithstanding previously registered trade-mark, "Quaker City."**

Candy manufacturer's trade-mark, comprising the words "Quaker Maid" in script letters, with the representation of a Quaker woman or maid, *held* entitled to registration, notwithstanding previous registration of trade-mark of other candy manufacturer, consisting of the words "Quaker City" in script letters, with the representation of a Quaker man on a gold seal; such trade-marks not resembling each other so nearly that confusion or mistake in the mind of the public will likely occur, within Trade-Mark Act Feb. 20, 1905, § 5 (Comp. St. § 9490).

6. **Trade-marks and trade-names and unfair competition ⬦45—Owner of trade-mark held not entitled·to exclusive use of one word therein to designate products.**

The registration of a trade-mark embracing the words "Quaker City" by candy manufacturer did not entitle manufacturer to· exclusive use of word "Quaker" to designate candy manufactured by it.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Trade-marks and trade-names and unfair competition ⬗45—Registration does not give registrant monopoly of every word in trade-mark.**

The registration of a trade-mark does not give registrant a monopoly of every word in the trade-mark, howsoever disposed and used.

8. **Trade-marks and trade-names and unfair competition ⬗8—"Quaker Maid" a valid trade-mark.**

The words "Quaker Maid" constitute a valid technical trade-mark.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by Christine M. Loughran and another against the Quaker City Chocolate & Confectionery Company, Inc. From the decree rendered (286 Fed. 694), both parties appeal. Affirmed.

Charles H. Howson, of Philadelphia, Pa. (Charles H. Howson and Kennard N. Ware, both of Philadelphia, Pa., of counsel), for Quaker City Chocolate & Confectionery Co.

Joshua R. H. Potts, of Chicago, Ill. (George B. Parkinson and Brayton G. Richards, both of Chicago, Ill., on the brief), for Loughran and others.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. These cross-appeals are from a decree entered by the District Court in a suit in equity brought by Christine M. Loughran and Christian W. Reiher against the Quaker City Chocolate & Confectionery Company, Inc., to enforce their claimed right to registration of a trade-mark and to compel cancellation of certain trade-mark registrations previously allowed the defendant.

In July, 1918, Christine M. Loughran (then Christine M. Kernan), filed an application in the United States Patent Office for registration of the words "Quaker Maid" as a trade-mark for candies, claiming use of this mark since October, 1913. Following an ex parte prosecution the Commissioner of Patents passed the application for publication in the Official Gazette. Trade-Mark Act of February 20, 1905, § 6, 33 Stat. 724 (Comp. St. § 9491). After publication, the Quaker City Chocolate & Confectionery Company filed a notice of opposition based upon prior use of its several marks. Issue was joined and testimony taken. The case was then presented to the Examiner of Trade-Mark Interferences. That official sustained the opposition, but on appeal the Commissioner of Patents reversed his decision. From the Commissioner's decision favoring registration the Chocolate Company prosecuted an appeal to the Court of Appeals of the District of Columbia. That court reversed the Commissioner of Patents and directed rejection of the Kernan (Loughran) application. Quaker City C. & C. Co. v. Kernan, 51 App. D. C. 283, 278 Fed. 592. Loughran, with Reiher who had acquired an interest in the trade-mark, then brought this action in the District Court under section 4915 of the Revised Statutes (Comp. St. § 9460) for the twofold purpose of compelling the registration of their trade-mark and the cancellation of the trade-marks of the Chocolate Company. The District Court adjudged the plaintiffs entitled to registration but dismissed that part of the bill by which they sought

cancellation of the defendant's registrations. Loughran v. Quaker City C. & C. Co. (D. C.) 286 Fed. 694. The defendant below, hereinafter referred to as defendant, appealed from the first part of the decree and the plaintiffs below, hereinafter referred to as plaintiffs, appealed from the second part. This is the history of the litigation. The story of the case is as follows:

On different dates between November, 1891, and April, 1906, being dates in some instances prior to the use and in all instances prior to the registration of the trade-marks here in contest, Doniphan & Co. of St. Joseph, Mo., adopted and used the word "Quaker" and various representations of persons in Quaker costume in its candy business. Trademark registrations were allowed Doniphan & Co. as follows: One in 1891, use claimed since October 1, 1890, showing a picture of a Quaker maid with the words "Quaker Brand"; another in 1895, showing a bust picture of a Quaker man and the word "Quaker," claiming use since September 30, 1890; another in 1905, showing a different picture of a Quaker maid with the words "Quaker Brand," claiming use since October 1, 1890; still another in 1906, showing a bust picture of a Quaker man with the word "Quaker," and claiming use since October 30, 1890.

In 1893, the defendant assumed the corporate name "Quaker City Chocolate & Confectionery Company" and, evidently without knowledge of the trade-mark registrations of Doniphan & Co., attached labels to its candies bearing the words "Quaker City" and the picture of a man in Quaker costume. On November 13, 1906, the defendant obtained the registration of the main characteristics of this label as trade-marks. No. 57,604 and 57,605. In their commercial use they are combined in a strip, bright red in color, having the words "Quaker City" prominently displayed at opposite ends in white script letters and containing in the center a gold seal bearing the picture of a Quaker man. Above the seal appears the words "Gold Seal Brand" and below the seal the words "Trade-mark." These trade-marks are used mainly, if not entirely, on penny specialties and constitute, the defendant claims, a valuable good will asset in a business that has grown through the years to very large proportions.

In using its trade-marks, however, the defendant has not confined itself to their precise words and figures, but, being entitled to the whole, it conceived it was equally entitled to their parts, and, so, broke them up and freely adopted the single word "Quaker"—the capital word or catch word of the marks—in wrapping and advertising its candies, using such expressions as "Quaker Brand," "Quaker Chips," "Quaker Kisses." In one instance, and in only one so far as the record shows, the words "Quaker Kisses" were accompanied with the picture of a Quaker woman or maid dressed in Quaker costume.

In October, 1912, Loughran first used the words "Quaker Maid," evidently without knowledge of the previous use by Doniphan & Co. or of the close use by the defendant in the instance mentioned. Her business started in a small way and has not greatly expanded. She manufactured her own candies and put them up and sold them in a plain white box with a picture of a Quaker woman and the words "Qua-

ker Maid" in script letters positioned diagonally across the top in a form practiced very generally by dealers who sell candies in pound boxes. In 1915, Loughran decided to register her trade-mark. A preliminary search disclosed the trade-marks of both Doniphan & Co. and the defendant. This, it is alleged, was her first knowledge of them, and in view of Doniphan & Co.'s registrations, she decided not to prosecute her application. Later, however, she learned that Doniphan & Co. had discontinued business. Upon verifying this information and regarding the trade-marks of Doniphan & Co. as being abandoned and therefore susceptible of valid appropriation by any one (Paul on Trade-Marks, § 101; Rice-Stix Dry Goods Co. v. Schwarzenbach-Huber Co., 47 App. D. C. 249, 250; Mayer F. & J. Co. v. Virginia-Carolina Chem. Co., 35 App. D. C. 425, 429), she made application as the first taker on July 6, 1918, for the registration here in controversy, and thereupon this litigation began.

[1] On the facts, which are not in dispute, the defendant has raised several questions of law. The first is whether the District Court had jurisdiction under section 4915 of the Revised Statutes to adjudge the plaintiffs entitled to the registration they seek. Since these appeals were taken that question has been removed from the case by the decision of the Supreme Court in American Steel Foundries v. Commissioner of Patents, 262 U. S. 209, 43 Sup. Ct. 541, 67 L. Ed. 953, sustaining the jurisdiction of District Courts in cases involving the registration of trade-marks.

[2, 3] The next question is whether the plaintiffs are entitled as matter of law to registration of their trade-marks. This depends upon a variety of considerations. In approaching this question we are moved to express hesitation in reviewing and indirectly reversing the action of the Court of Appeals of the District of Columbia in a matter peculiarly within the province of that court. While technically a bill in equity under section 4915 of the Revised Statutes is an action de novo (Butterworth v. Hoe, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656; Appert v. Brownsville P. G. Co. [C. C.] 144 Fed. 115, 117), it is, nevertheless, in effect, a suit to set aside a judgment made by the Court of Appeals of the District of Columbia within its special jurisdiction (Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657). Yet, as the cited statute extends a litigant's remedy beyond that court to the district court and, by appeal, to the circuit court of appeals, a question of this kind, when it reaches the latter courts, must there be considered and determined on its merits. We make this observation, however, that in a case for the registration of a trade-mark, the law applicable to patents where priority of invention is involved is equally applicable to trade-marks in that the plaintiff, to prevail, cannot rely upon a mere preponderance of evidence but must overcome the decision in the Court of Appeals of the District of Columbia by testimony which in character and amount brings thorough conviction. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657; Gold v. Gold, 237 Fed. 84, 86, 150 C. C. A. 286; Gold v. Newton, 254 Fed. 824, 166 C. C. A. 270, certiorari denied, 249 U. S. 608, 39 Sup. Ct. 290, 63 L. Ed. 799; Barrett

Co. v. Ewing, 228 O. G. 761; Curtiss Corporation v. Janin (C. C. A.) 278 Fed. 454.

[4] Further, we desire to note that in this discussion nothing we may say should be construed as an opinion of this court on the validity of the defendant's trade-marks. We are not concerned in this action with the validity of the defendant's trade-mark registrations; we are concerned only with the plaintiffs' right to have their trade-mark registered. Therefore any comments we may make upon the defendant's trade-marks will be addressed only to the position it has taken in opposition to the plaintiffs' registration.

We direct our inquiry to the presence of deceptive similarity in the opposing trade-marks. In this connection the statute provides (Trade-Mark Act of February 20, 1905, § 5, 33 Stat. 724 [Comp. St. § 9490]):

"That trade-marks which are identical with a registered or known trade-mark owned and in use by another, and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another, and appropriated to merchandise of the same descriptive properties, as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers, shall not be registered."

[5-7] The defendant's trade-marks, as we have shown, comprise the words "Quaker City" in script letters with the representation of a Quaker man on a gold seal. The plaintiffs' trade-mark comprises the words "Quaker Maid," likewise in script letters, with the representation of a Quaker woman or maid. The background of the defendant's trade-mark is bright red; that of the plaintiffs plain white. Color, however, is not a part of the trade-marks. The defendant introduced no evidence that these trade-marks are confusing because of similarity. In other words, it did not attempt to prove that the trade has ever been confused by the marks or that purchasers have ever mistaken one for the other, or have mistaken the wares they mark, a situation which at first induces one's mind to conclude that the ground for opposition is not tenable. Patton Paint Co. v. Sunset Paint Co., 53 App. D. C. 348, 290 Fed. 324, 326. Therefore, we must determine from the trade-marks themselves whether they resemble each other so closely that confusion or mistake in the mind of the public will likely occur. Wm. Waltke Co. v. Schafer Co., 49 App. D. C. 254, 263 Fed. 650; Pillsbury v. Pillsbury, etc., Co., 64 Fed. 841, 847, 12 C. C. A. 432; Ammon & Person v. Dairy Co. (D. C.) 252 Fed. 276, 278. Without reciting the processes by which we have arrived at our conclusion, it will be enough to say that after a careful study of these trade-marks we have not found such similarity, and, therefore, are constrained to affirm the finding of the learned District Judge, though it be opposed to that of the Court of Appeals of the District of Columbia. Kentucky D. & W. Co. v. P. Dempsey & Co., Com'rs. Dec. 1907, 309. But the unusual thing about the opposition of the defendant is that its complaint does not extend so much to a claimed deceptive similarity between the contesting trade-marks as it does to its claimed right, previously stated, to take out of its trade-marks the catch word "Quaker" and use it in its business generally—and exclusively. The defendant maintains that it has used the

word "Quaker" disjoined from the word "City" and has applied it to advertising, wrapping, boxing and selling its candies so long that its candies have become known to the public by this single word and therefore the registration of the plaintiffs' trade-mark of "Quaker Maid," though accompanied with the representation of a Quaker woman, would carry to the trade the idea that the plaintiffs' candies are made by the defendant. This conclusion is only true if the defendant were entitled to the exclusive use of the word "Quaker." We cannot see what right it has to appropriate and make claim to the exclusive use of one of several trade-mark words. "Quaker City," the name by which the City of Philadelphia is popularly known, is a name freely used by a multitude of tradesmen, as an inspection of the telephone directory of that city will abundantly show. The registration of a trade-mark does not give the registrant a monopoly of every word in the trade-mark howsoever disposed and used.

[8] But the defendant is gravely concerned on the issue of similarity because of what it claims to be the disadvantageous tactical position in which the decree of the District Court has placed it. It argues that the decision of that court is an adjudication between these parties that their trade-marks are similar within the meaning of the statute and that the plaintiffs are prima facie owners. Armed with this decision the plaintiffs will, the defendant contends, place their mark on the register. The defendant's trade-mark is already registered. Under section 5 of the Trade-Mark Act, two similar trade-marks may not remain on the register. A cancellation proceeding, as provided by section 13 of the act, would then be in order. The defendant, the prior user of the trade-mark, cannot bring such a proceeding "if it is bound by the decision of the lower court which adjudges the plaintiffs entitled to registration." The defendant next contends there is nothing to prevent the plaintiffs from bringing such a proceeding against it and that if they do and are successful, they will be in position, by virtue of their prima facie title, to proceed under the Trade-Mark Act to enjoin the defendant from using its own trade-marks. This argument is adroit, but we think it is not entirely sound. It is based on the false premise that the decree of the District Court adjudging the plaintiffs entitled to registration of their trade-mark is a decision that the contesting trade-marks are similar within the meaning of the statute. It occurs to us that the only inference to be drawn from the decree of the District Court authorizing registration of the plaintiffs' trade-mark is that it is not similar to the trade-marks of the opposing defendant. Otherwise there would be neither justification nor validity in the award of registration. At all events, it is our purpose by this decision on appeal to make it clear that the trade-marks here in opposition are not similar within the meaning of the statute and that, for this reason, the plaintiffs' right to registration adjudged by the District Court should be sustained, and for the added reason that, in our opinion, the words "Quaker Maid" constitute a valid technical trade-mark. Hamilton-Brown Shoe Co. v. Wolf Brothers & Co , 240 U. S. 251, 256, 257, 36 Sup. Ct. 269, 60 L. Ed. 629, "The American Girl"; Nestle & Anglo-Swiss Condensed Milk Co. v. Walter Baker & Co., 37 App. D. C. 148, 1 T. M. Rep. 90, 93,

"Milkmaid Brand"; Northern Shoe Co., 4 T. M. Rep. 415, "Northern Maid."

The remaining questions are whether, on the facts, the District Court had jurisdiction to order the cancellation of the defendant's trade-mark registrations, and if it had, whether the defendant's registrations should not be cancelled. These questions arose on the plaintiffs' appeal and are decided adversely to them.

The decree below is in all respects affirmed with costs of these appeals to be paid one-third by Loughran and Reiher and two-thirds by the Quaker City Chocolate & Confectionery Company, Inc.