## PERRY AUTO LOCK CO. et al. v. SECURITY LOCK CO.

## PERRY AUTO LOCK CO. v. SECURITY LOCK CO. et al. (two cases).

(Circuit Court of Appeals, Seventh Circuit. October 3, 1922.)

### Nos. 2907, 2908, 2909.

1. Patents ⚖➞328—1,205,124, for automobile lock, claims 3, 4, and 5, held invalid.

The Davis patent, No. 1,205,124, for an automobile lock for Ford cars, claims 3, 4, and 5, *held* invalid on a finding of priority of invention by Perry covered by Perry patent, No. 1,282,121.

2. Patents ⚖➞112(1)—Opinions rendered in proceedings in Patent Office not admissible in evidence.

Generally speaking, opinions and proceedings in interference in the Patent Office, other than the judgment or decree rendered, are not admissible as evidence in suits to determine priority.

3. Patents ⚖➞112(4)—Finding of priority by Patent Office presumptively correct.

Where the question of priority of invention has been decided in the Patent Office between contesting parties; such decision must be accepted as controlling on that question of fact, unless the contrary is established by evidence which in character and amount carries thorough conviction.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Security Lock Company against the Perry Auto Lock Company and others, with cross-suits, consolidated. Decree for complainant, and defendants appeal. Reversed.

Certiorari denied 43 Sup. Ct. 248, 67 L. Ed. ——.

Frank Parker Davis, of Chicago, Ill., for appellants.
Charles C. Bulkley, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. In No. 2907, appellee alleges infringement by appellants of claims 3, 4, and 5 of patent No. 1,205,124, filed September 28, 1916, and issued November 14, 1916, to Edward E. Davis. In No. 2908, appellant alleges infringement by appellees of claim 1 in patent No. 1,217,104, filed December 7, 1916, and issued February 20, 1917, to Ira D. Perry. In No. 2909, appellant alleges infringement by appellees of all the claims in patent No. 1,282,121, filed December 7, 1916, and issued October 22, 1918, to Perry.

[1] It is stipulated that the successful party shall have a decree canceling the involved claims of the losing party, and that the only question involved is priority of invention. The court, after a hearing where most of the testimony was given in open court, found Davis to be the prior inventor under patent No. 1,205,124.

Davis and Perry, in 1916, each had a pending application for a locking device. Davis, on September 25, 1916, made a divisional application, which resulted, on November 14, 1916, in patent No. 1,205,124. On December 7, 1916, application No. 1,282,121 was filed by Perry, embodying Davis claims 3, 4, and 5, and was allowed after interference

⚖➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

proceedings between it and No. 1,205,124 were disposed of favorably to Perry. Other than the stipulated fact that the Davis invention in No. 1,205,124 was completed as early as May 6, 1916, and the introduction of the letters patent, the record is silent upon the history of the Davis invention.

It is conceded that Perry had an auto lock for cars other than Fords, called the "big lock." In January, 1916, long after he claims to have had the Ford lock fully completed, Perry made application for a patent in which no direct reference was made to the Ford lock, and it is conceded that, except in the broadest sense, it did not cover that invention. Some time between May 19 and May 27, 1916, Perry saw the Davis lock in the office of one Barrett, a patent draftsman. From that fact, together with discrepancies in the testimony of some of appellants' witnesses, and facts testified to by witnesses called by appellee, appellee urges that Perry, prior to the time when he saw the Davis lock, had never made a Ford lock, as he had testified, and that appellants' witnesses, who had testified that they had been shown by Perry a drawing for a Ford lock in 1912, and others who had said Perry had shown them a completed Ford lock in 1915, and before May 6, 1916, either had fabricated their testimony or were confused as to what they really saw. It is urged that what those witnesses saw, if anything, was the "big lock," and not a Ford lock. The "big lock" is not otherwise here involved.

Some time early in 1916, Perry had negotiations with the Lindheimers, by which he hoped to interest them in the "big lock." The testimony of four of appellee's seven witnesses, viz. Leibrandt and the three Lindheimers, relates wholly to those negotiations, and is relied upon as creating a presumption that Perry's idea of a Ford lock patent grew out of those negotiations, after he had seen the Davis lock. Leibrandt says that Perry saw him about a note due on April 17, 1916, after which Perry showed him the "big lock," and that he referred Perry to one Murphy, who might be interested in it.

Arthur Lindheimer fixed his date by reference to the time he says he left the employ of the Ford Motor Company, which was May 27, 1916. He says he met Perry a week or 10 days before that, and on May 25th bought for and delivered to Perry a Ford steering wheel. Arthur's brother Benjamin testifies that he met Perry about the middle of April, 1916, that negotiations for the "big lock" lasted for 3 or 4 weeks, and that the lock was rejected, because not practical for a Ford car. He further testifies that later, about May 20th, Perry brought a pencil sketch of a Ford lock, and said "We should use all haste we could because he had seen a similar lock in a draftsman's office"; that later Perry brought a pen drawing, which looked like Perry's 1912 drawing of the Ford lock, identified by Slocum and others.

Jacob Lindheimer, the father, testifying about the negotiations, fixes the time of their beginning as "some time in April, 1916," and says that about a month after they were dropped, and as near as he could remember between the 15th and 20th of May, Perry told him he now had a lock adapted to the Ford car; that he gave Perry money to have a Ford lock made in Milwaukee, which he says Perry did, and had it

fitted onto the Ford post, bought by Arthur; and that all this was done by the latter part of May. The evidence as to the date when Perry saw the Davis lock is that it was after the 19th and before the 27th of May, but there is no certainty that he saw it on any day before the 26th.

Does Benjamin's "about May 20th" mean on the 20th, or before, or after? If before, then Perry must have shown him the pencil sketch before he saw the Davis lock. If Jacob's "between the 15th and 20th" is correct, then Perry went to Jacob with a pencil sketch certainly before, and possibly 5 or 10 days before, he saw the Davis lock. Benjamin and Jacob seem to have been testifying about the same negotiations. Benjamin says he met Perry about the middle of April, carried on the negotiations for 3 or 4 weeks and then broke them off (that would be about the 7th or 15th of May), and that about the 20th Perry brought the pencil sketch; whereas, Jacob says he was introduced to Perry by Leibrandt, who never saw Perry until about April 17, 1916, and that about a month after negotiations were broken off, Perry, between May 15 and 20, 1916, brought in the pencil sketch. This is all too uncertain to be used as a basis for establishing the probability of the claim that Perry had no Ford lock before May 20, 1916.

Perry testified that in the early spring of 1915 he took a second-hand Ford steering post to one Reinsch to have a cap removed, and that after Reinsch failed he took it to one Hilshoff, a plumber, who removed it. He says that was a week or more after the Ford lock, made in May, 1915, was completed. Appellee called Hilshoff, who testified that Perry brought the post to him within a day of May 12, 1916, and fixes the date by saying that his books show that on that day he did a plumbing job at Perry's house. He did not attempt to contradict Perry's testimony about the second-hand Ford steering post. Conceding that this is in contradiction of Perry as to the year, it with equal certainty fixes the time when Perry was working on that second-hand Ford steering wheel, for some purpose, as from one to two weeks before Perry saw the Davis lock at Barrett's.

Without going into the evidence favorable to the priority of the Perry invention, we deem it sufficient to say that it contains the testimony of many witnesses, showing very conclusively the priority in Perry, unless we are compelled to find from the record that wholesale perjury has been indulged in, not only by Perry, but also by some 10 other witnesses, some of them appearing to be wholly disinterested, and unless there was forgery by Perry of the memoranda on the drawing for a Ford lock, which Perry says he made and which Slocum and Ascher testify they saw in 1912. The evidence does not justify such a conclusion.

[2] It appears that Davis claims 3, 4, and 5 were involved in an interference proceeding after the allowance of the Davis patent in suit, and that findings in favor of priority in Perry were made as follows: By Stauffer, Examiner, December 21, 1917; on appeal, by three Examiners in Chief, May 20, 1918; and, on an appeal from those Examiners, by the Commissioner, June 20, 1918. The District Court said it had read those opinions, but refused to admit them or the evidence on the

interference proceedings in evidence, or to consider them. The court, upon the trial, referring to the state of the evidence introduced by appellees, said:

"He did not put in any evidence on the question of priority except his patent. Presumably the patent is valid and that establishes priority."

[3] Cases in which proceedings in interference have been admitted in evidence are numerous, but, generally speaking, such proceedings, other than the judgment or decree rendered, are not admissible, and the District Court did not err in not admitting the evidence tendered. Ecaubert v. Appleton, 67 Fed. 917, 924, 15 C. C. A. 73. In that case, however, the court noted and adopted the rule laid down in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, as follows:

"Upon principle and authority, therefore, it must be laid down as a rule that where the question decided in the patent office is one between contesting parties, as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which, in character and amount, carries thorough conviction."

The above rule was adopted by this court in Western Electric Co. v. Fowler, 177 Fed. 224, 101 C. C. A. 394, in an opinion by Judge Grosscup, where it was said:

"To overcome these judgments [in interference cases] the proof must be clear and convincing—by evidence which shall strongly outweigh that of the respondent below."

This court again supported that rule in Gold v. Gold, 237 Fed. 84, 150 C. C. A. 286.

It is urged by appellee that the proceedings in the Patent Office were not disclosed, nor relied on, in the pleadings. The conclusions reached by the Patent Office in the interference cases were not disputed on the trial; but the award of priority to Perry was frequently adverted to as an undisputed fact, and appellee's counsel in his argument before us said:

"Subsequent to the grant of the Davis patent in suit, on November 14, 1916, Perry for the first time filed an application on December 7, 1916, illustrating, describing and specifically claiming the Ford adaptation. The Patent Office declared an interference between the December, 1916, application of Perry and the patent of Davis, which was decided in favor of Perry, whereupon a patent was granted to Perry, on which Perry's assignee, the appellant, brought a countersuit against appellee, and the question of pricrity there involved is again involved in the instant case, the two cases having been consolidated and tried as one case."

The Patent Office did everything which it had the authority to do to nullify the patent issued to Davis, so far as it considered it was affected by what it held was the prior invention of Perry, and we are of opinion that the District Court, under the circumstances shown, should not have held that the Davis patent established priority of his invention. That patent was not prima facie evidence of priority, and it was error to so hold. We are of opinion that the evidence favorable to Davis' priority does not carry a thorough conviction that the finding of priority in Perry was erroneous.

The decree of the District Court is reversed, with direction to enter a decree finding priority in Perry and canceling claims 3, 4 and 5 in appellee's patent, and for such other proceedings as are required by the pleadings and evidence in harmony with this opinion.