**BURRY RY. SUPPLY CO. et al. v. LAUGHLIN et al.** *

(Circuit Court of Appeals, Seventh Circuit. January 5, 1924. Rehearing Denied April 11, 1924.)

No. 3294.

1. Patents ⬤⟹328—1,396,687, claims 22 to 26, for side bearings for railroad cars, held not infringed.

Laughlin patent, No. 1,396,687, claims 22 to 26, for an invention relating to side bearings for railroad cars, *held* not infringed.

2. Patents ⬤⟹328—1,396,688, claims 32, 33, for side bearings for railroad cars, held void.

Laughlin patent, No. 1,396,688, claims 32 and 33, for an invention relating to side bearings for railroad cars, *held* void.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Elmyr A. Laughlin and another against the Burry Railway Supply Company and another. Decree for complainants, and defendants appeal. Reversed, with directions to enter a decree in conformity with the following opinion.

Geo. L. Wilkinson, of Chicago, Ill., for appellants.

Joshua R. H. Potts and Brayton G. Richards, both of Chicago, Ill., for appellees.

Before BAKER and EVANS, Circuit Judges, and CARPENTER, District Judge.

EVAN A. EVANS, Circuit Judge. Appellees, hereinafter called plaintiffs, brought this suit against appellants, hereinafter called the defendants, to determine the validity of certain patents, and to enjoin their further alleged infringement. Claims 22 to 26 of the Laughlin patent, No. 1,396,687, and 32 and 33 of Laughlin patent, No. 1,396,688, are involved. Likewise an interference contest involving claims 1 to 7 of Laughlin patent No. 1,396,687 is presented.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 637, 68 L. Ed. —.

[1] Defendants contend that they are entitled to these claims allowed by reason of the grant of patent No. 1,191,153 to Burry. The Burry patent contains 8 claims, the first 7 of which are identical with the first 7 of the Laughlin patent above referred to. It is not contended that there was infringement of these 7 claims, but this issue was inserted by reason of section 4918, R. S. (Comp. St. § 9463), authorizing the review of the decision of the Court of Appeals of the District of Columbia. Defendants counterclaimed, and asked that Burry's title to these 7 claims be upheld.

The Court of Appeals of the District of Columbia, after hearing the oral evidence, a copy of which was received as a part of the testimony in the District Court, found Laughlin to be entitled to these 7 claims. The acting District Judge filed a memorandum decision, brief extracts of which are here set forth.

"Until the relations were broken off by Turner, Laughlin gave to Burry every idea and thought he had, gave him his models and blueprints, fully discussed features that proved impractical or that would infringe other patents, and every difficulty arising from any cause. There seems not to have been any time when Laughlin's mind was not an open book to Burry. Burry's relation from the start, as the record shows, was necessarily that of a confidential assistant, and that relation fixed his obligation and duty to Laughlin, regardless of who was paying him or whether he was paid at all. * * *

"Burry's claim that Laughlin had no thought of a rocker with plain bearings is not supported by the evidence. Burry carried away with him from Chicago Laughlin's model, with removable teeth, with the teeth removed; the model as presented in evidence shows plain bearing surfaces, with the teeth tied to it with a string. * * * It is almost beyond belief that one in Burry's position, with no knowledge or experience as an inventor, and without any knowledge of the prior art, as shown by many patents in evidence and testified about, and without aid from anything disclosed to him by the experienced Laughlin, could have threaded his way through the maze of difficulties, and in one week found the real difficulty and the real remedy.

"I am of the opinion that Burry occupied a position of confidence and trust to Laughlin, and that whatever he accomplished was through and by the aid and assistance received from Laughlin, and of right belongs to Laughlin. I am further of opinion that, under the authority of Perry Auto Lock Co. v. Security Co. (C. C. A.) 286 Fed. 101, * * * the finding of the Court of Appeals of the District of Columbia, 50 App. D. C. 273, 270 Fed. 1013, favorable to Laughlin, upon the question of interference between claims 1 to 7 in the patents No. 7 and the Burry patent raised in the bill, and also in the counterclaim, must be considered as final, because it is not in my opinion in any way overcome by the evidence before me."

There is, it is true, testimony from which it might be inferred that Laughlin at times sanctioned Burry's action in applying for the patent. Such inferences, however, are explainable on the theory that at the time Burry made his application the whole enterprise was viewed by Laughlin as a joint one. Moreover, both parties were actuated by a desire to secure favorable contracts from railroads for the manufacture of the patented articles. Considering all of the evidence, which it is unnecessary to here detail, we find no justification for disturbing the finding of the Court of Appeals of the District of Columbia, confirmed by the District Court in respect to these 7 claims.

Claims 22 to 26, inclusive, of Laughlin patent, No. 1,396,687, are attacked because of the prior art, as evidenced by the Burry patent,

No. 1,191,153, the Stucki patent, No. 930,901, the Meister patent, No. 1,200,005, and the Stucki patent, No. 1,187,675. In our consideration of this case we have eliminated the Burry patent above referred to, because of the issues involving priority of invention and scope of the inventor's conceptions. Claim 22 reads:

"A bearing device comprising upper and lower bearing members having plain bearing faces, vertically movable and longitudinally shiftable, one with relation to the other; a rotatable bearing member interposed between said upper and lower bearing members and provided with plain bearing faces having rolling engagement therewith; two laterally extending lugs on the lower side portion of said rotatable member; and a guide projection on said lower bearing member engaging between the lugs on said rotatable member—substantially as described."

Contenting ourselves with a consideration of the Meister and Stucki patents, we find ourselves under the necessity of strictly limiting and restricting the Laughlin patent to the combination described in the claim, the first element of which describes "an upper and lower bearing member having plain bearing faces vertically movable and longitudinally shiftable, one with relation to the other." A "rotatable bearing member interposed between said upper and lower bearing members" is provided with "two laterally extending lugs on the lower side portion of said rotatable member," and the bearing member is provided with a "guide projection." Meister, in his specifications, described a "roller side bearing," as follows:

"In roller side bearings for railway cars, difficulty has heretofore been experienced in causing the roller to return automatically to its central or normal position, except by the use of springs or intricate and numerous parts.

"The object of my invention is to produce a roller side bearing, simple in construction, consisting of the least number of parts, and so arranged that the roller will return to its central or normal position by the action of gravity.
* * *

"The operation of this device will be readily apparent. The bearing is secured in place to the upper part of the car truck on which it is to be used in any suitable manner, and when contact is made between the top or body side bearing (not here shown) and the roller, and the truck to which the bearing is secured, is deflected, the roller rolls along the top surface of the bottom plate, and in so doing the lugs attached thereto move in the channels of the side walls, following a curved path known as a trochoid. When the top or body side bearing is not in contact with the roller, and the roller is away from its central or normal position, the roller is caused to roll back again to its central or normal position by the action of gravity on the lugs, and also by the walls of the channels guiding the lugs of the roller, so as to cause the roller to roll in a predetermined manner."

He also describes a combination wherein the lugs are not fixed parts of the roller. Figure 6 of his drawing discloses the rotatable bearing member, the latterly extending lugs on the lower side thereof, and a guide projection on the bearing member. The lower bearing member appears, but the structure with two such members is not shown. But neither do the appellants, in their so-called Peerless bearing, disclose an upper bearing member as such. It is true there must be an upper and lower surface to the bearing member, but the upper surface of the "rotatable bearing member," referred to in the Laughlin patent, is separate and distinct from the upper bearing member described in the first element of the combination.

We are not called upon to determine the validity of a claim which makes the advance or improvement of Laughlin's device over Meister's. For the purpose of this argument it may be conceded that the trial judge was correct in saying that invention appeared in this new combination. But for the purpose of determining appellants' infringements it becomes necessary for us to examine the Meister and Stucki patents to properly determine the scope of Laughlin's patent. Appellees cannot distinguish their structure from the Stucki patent by stressing one element, and then eliminate the same feature in order to make a case of infringement against appellants.

The conclusion is inescapable that appellants in their Peerless bearing were building on the Meister concept, while Laughlin was endeavoring to depart therefrom in his effort to solve the problem of a practical side bearing. We conclude that the very basis for distinguishing appellee's patent from the Stucki and Meister disclosures likewise distinguishes appellants' so-called Peerless type from the claims of the Laughlin patent above referred to.

The necessity of the first element in the combination is apparent, when we consider the purpose and object of the various prior art patents. They all relate to "bearings for car trucks." The common and generally accepted type was a bearing of the "center load carrying type." Laughlin was endeavoring to provide a practical device for use as a side bearing, though of course, if infringement be shown, he was not restricted to its place upon the car. The record abounds with evidence showing that the real goal of his efforts was to provide a bearing for use on the side or corners of the truck wherein the "rollers or rockers will always be centered or brought back to normal load bearing position when the truck or running gear is straightened out with reference to the vehicle body."

Other differences between the roller bearing (whether used as a center or side bearing) and a device where the bearing is provided with upper and lower bearing members, between which the rotatable bearing member is interposed, we need not elaborate. One only will be briefly mentioned. The evidence justifies the appellants' assertion that its "roller bearing" is automatically adjustable. By reducing the weight of the upper half, and by adding lugs to the lower portion, it responds to the force of gravity and assumes automatically its central position when the load is lifted. It is true that in the Laughlin patent under consideration the rotatable member is provided with extending lugs on the lower portion, and the lower bearing member has guide projections. But the upper bearing member in the Laughlin patent is made so that the bearing returns to its normal position by the weight of the load upon it; that is to say, after the car turns a curve and is straight, the bearings resume their central position not by the force of gravity, but by the pressure of the load.

We conclude that claims 22 to 26, inclusive, in patent No. 1,396,687, are not infringed.

[2] But two claims of the Laughlin Patent No. 1,396,688 are involved. The heretofore described state of the prior art renders an ex-

tended discussion of the patent unnecessary. Claim 32, typical also of claim 33, is as follows:

"In a car mounting, a truck; a car body on said truck; a bearing housing on said truck; a bearing member in said housing and having plain bearing surfaces, said bearing member being arranged to automatically assume, under the influence of gravity, a central position therein; co-operating guides on the sides of said bearing member and lower housing permitting rolling movement of said bearing member; and an operative engagement between said car body and said bearing member—substantially as described."

The application was filed January 2, 1917, and the patent issued November 8, 1921. The specifications and the drawing suggest that these claims were .inserted as an afterthought, not to embody the original conception of the inventor, but to cover devices that had subsequently made their appearance. The drawings do not disclose a bearing member "which automatically assumes its normal position under the influence of gravity." If the claim as drawn is to be given a literal and liberal construction, it is anticipated by the Stucki and Meister patents. If the language of the claim is restricted to the disclosure of the specifications and the drawings, then appellants' device does not infringe. To illustrate: If the "bearing member in said housing and having plain bearing surfaces, said bearing member being arranged to automatically assume, under the influence of gravity, a central position therein," covers the so-called roller type of bearing, it is, we think, anticipated by Meister and Stucki; but if the structure thus described is limited to the type shown in Figures 7, 9, and 11 of the patent, it is not infringed.

Moreover, we are not satisfied that the "bearing member will automatically assume under the influence of gravity its central position in the housing." A study of the models presented (exhibits here) confirms this impression, and while it may be said that there is a tendency on the part of the housing member to thus automatically assume its central position through the force of gravity, especially when superinduced so to do by the jar and movement of the train, it cannot be correctly said that they do automatically assume this position. We conclude that the claims are void.

The decree is reversed, with costs, with directions to enter one in conformity with the view heretofore expressed.