## DE FOREST RADIO TELEPHONE & TELEGRAPH CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(District Court, E. D. Pennsylvania. June term, 1924.)

### No. 3125.

**1. Judgment ☞564(2)—Doctrine of res judicata does not apply to interlocutory decree, though affirmed by appellate court.**

The doctrine of res judicata applies only to a final, and not to an interlocutory, decree, though the latter has been affirmed by an appellate court.

**2. Patents ☞328—De Forest, 1,507,016 and 1,507,017, for oscillating audion and feed-back circuit held prior in invention to claims of Armstrong 1,113,149, covering the same invention, and such claims of the latter held invalid.**

Under the rule that the decision of the patent office on the question of fact as to priority of invention must be accepted by the courts as controlling, unless the contrary is established by evidence which carries thorough conviction, evidence *held* insufficient to overcome the decision of the Court of Appeals of the District of Columbia in interference proceedings that as between De Forest, patentee in No. 1,507,016 and 1,507,017 for an oscillating audion and feedback circuit, and Armstrong, patentee in No. 1,113,149, some of whose claims cover the same invention, De Forest was prior in invention, and did not abandon his invention, and claims 1, 2, 3, 5, 8, 9, 12, 14, 15, 16, 17, and 18 of the Armstrong patent *held* invalid.

In Equity. Suit by the De Forest Radio Telephone & Telegraph Company against the Westinghouse Electric & Manufacturing Company. Decree for complainant.

Samuel E. Darby, Jr., of New York City, Thomas G. Haight, of Jersey City, N. J., and Francis B. Bracken, of Philadelphia, Pa., for plaintiff.

Thomas Ewing, Drury W. Cooper, and H. Frank Wiegand, all of New York City, and Howson & Howson, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This is a suit in equity brought by the plaintiff as assignee of patents Nos. 1,507,016 and 1,507,017, both granted September 2, 1924, to Lee De Forest, against the defendant as assignee of patent No. 1,113,149, granted October 6, 1914, to Edwin H. Armstrong. The bill alleges that the plaintiff's patents and the defendant's patent are interfering patents within the meaning of section 4918, R. S. (Comp. St. § 9463), in that the invention of the Armstrong patent No. 1,113,149 and the inventions of the De Forest patents Nos. 1,507,016 and 1,507,017 are the same, or substantially the same in part at least, and that the Armstrong patent claims subject-matter claimed in the De Forest patents. The bill prays that the court declare an interference, and that the interfering claims of the Armstrong patent be declared void.

The plaintiff sets up in its bill of particulars that the subject-matter in whole or in part of both of the plaintiff's patents is directed to the so-called "feed-back" or "regenerative" circuit arrangement or arrangements employed with a three-electrode vacuum tube or audion, whereby current variations in one circuit create corresponding variations in a second circuit which are fed back to the first circuit to still further amplify the variations in such first circuit, and these still further amplify those in the second circuit; and, as to De Forest patent No. 1,507,016, the bill of particulars adds the important clause "until a sustained alternating current is finally produced."

The subject-matter of De Forest patent No. 1,507,017 is thus claimed to be the so-called "feed-back circuit," with the further development in De Forest patent No. 1,507,016 of the so-called "oscillating audion," while the interfering claims of the Armstrong patent include both the feed-back circuit and the oscillating audion under the same application and letters patent.

The interfering claims of De Forest patent No. 1,507,016 and the Armstrong patent are alleged to be: De Forest claims 24, 25, 26, 27, and 28, and Armstrong claims 1, 2, 3, 5, 8, 9, 12, 14, 15, 16, 17 and 18. The interfering claims of De Forest patent No. 1,507,017 and the Armstrong patent are alleged to be: De Forest claims 15, 17, 18, 19, 20, and 21, and Armstrong claims 1, 2, 3, 5, 8, 9, 12, 14, 15, 16, 17, and 18.

It is not denied in the defendant's answer that the patents are interfering patents as alleged.

It would be futile for one not skilled in the art to attempt a technical statement of the subject-matter of these inventions beyond what is set out in the patents. It may be noted, however, that their subject-matter is not a physical structure, but is a circuit arrangement employed with the physical structure known as the audion or three-electrode vacuum tube invented by De Forest, and for

which he was, on February 18, 1908, granted patent No. 879,532.

Armstrong says in his specification, and it is true also of the De Forest patents, the "improved arrangement corresponds with the ordinary arrangement of circuits in connection with an audion detector to the extent that it comprises two interlinked circuits; a tuned receiving circuit in which the audion grid is included and which will be hereinafter referred to as the 'tuned grid circuit,' and a circuit including a battery or other source of direct current and the 'wing' of the audion, and which will be hereinafter referred to as the 'wing circuit.' As is usual, the two circuits are interlinked by connecting the hot filament of the audion to the point of junction of the tuned grid circuit and the wing circuit."

In the specification of De Forest patent No. 1,507,017 the feed-back circuit is thus described: "The current variations in the grid filament circuit produce corresponding variations in the plate filament circuit which are fed back to the grid filament circuit to add their effects to the initial variations, which latter thus reinforced, create and form greater variations in the plate filament circuit which are, in turn, fed back to the grid filament circuit to still further amplify the variations in that circuit and so on."

When sufficient energy is fed back from the plate filament circuit or output circuit to the grid filament or input circuit, the system or arrangement becomes itself a generator of continuous oscillations or alternating current or "oscillating audion," and De Forest continues in his specification: "The energy of the variations of each circuit reacts upon and increases that of the other circuit until a maximum sustained alternating current is finally produced whose frequency can be controlled by varying the electrical constants of the associated circuits. In other words, the amplifying action incident to the feeding back of energy from the one circuit to the other increases until oscillations are produced which, once set up, are self-perpetuating, analogous to the 'whistling' or surging action observed when a telephone receiver and microphone transmitter, connected together in the same or coupled circuits, are so placed as to react one on the other mechanically and electrically."

There is no dispute about the accuracy of these terse descriptions of the action of the system or arrangement of the invention of the feed-back circuit and the development of the oscillating audion, and it follows that it is impossible to obtain the oscillating condition, that is maximum feed-back, without passing through the less than maximum or nonoscillating condition.

It is unnecessary here to set out in extenso the claims which the plaintiff asserts and the defendant does not deny and, in effect, has conceded, throughout the trial, are in interference.

The Armstrong patent in suit was construed by Judge Mayer of the Southern District of New York in Armstrong v. De Forest Radio Telephone & Telegraph Co. (D. C.) 279 F. 445, where Armstrong brought suit against the present plaintiff for infringement of the Armstrong patent here in suit, and by Judge Manton speaking for the Circuit Court of Appeals for the Second circuit affirming Judge Mayer's decree in favor of Armstrong (280 F. 584).

The invention disclosed by the three patents here in suit was also the subject of Justice Van Orsdel's opinion in the Court of Appeals for the District of Columbia in De Forest v. Meissner, 54 App. D. C. 391, 298 F. 1008.

In the New York cases, it was distinctly recognized that, while the claims of the Armstrong patent are for an instrumentality for amplifying received sound waves by means of the feed-back circuit arrangement, the patentee is entitled to the rights of invention in any further use to which the instrumentality may be put, including its use as an oscillating audion. Under the authority of those decisions, the claims of each of the two De Forest patents here in controversy, it must be concluded, are covered by the subject-matter of the Armstrong patent.

In the New York suit, the question of priority of invention as between Armstrong and De Forest was directly in issue. That fact was found in favor of Armstrong. The same question of priority of invention arose before the Court of Appeals of the District of Columbia in De Forest v. Meissner et al., supra. This was an interference proceeding arising in the Patent Office, in which the applications for the Armstrong patent and for De Forest patent No. 1,507,016, together with the applications of two other parties, Meissner and Langmuir, were involved. The controversy was carried through the several tribunals of the Patent Office with varying decisions, and, upon appeal from the commissioner of patents awarding priority of invention of the subject-matter of the interference to Armstrong, the Court of Appeals of the District of Columbia, in an opinion by Associate Justice Van Orsdel, reversed the prior decisions of the Patent Office, and awarded priority to De Forest.

There was also pending an interference proceeding in which De Forest, Meissner, and Langmuir were parties, in which, upon appeal, the Court of Appeals of the District of Columbia in the same opinion above cited awarded priority to De Forest over Meissner and Langmuir for his patent No. 1,507,017. The record upon the suit in the Second circuit and that upon the interference proceedings was offered in evidence in the instant case. That upon the three-party interference was objected to upon the ground that Armstrong was not a party to that proceeding. As the question here is priority of invention, I think it is immaterial whether that record is admitted in evidence or not, because the invention of the feed-back circuit under the authority of the New York case carries with it the invention of the oscillating audion, and, on the other hand, the oscillating audion involves the invention of the feed-back circuit. The instrumentality was what was invented.

The effect of the conflicting decrees of the District Court for the Southern District of New York, affirmed by the Circuit Court of Appeals of the Second Circuit, and of the Court of Appeals of the District of Columbia upon the present controversy, is squarely raised.

[1] The defendant contends that the question of priority of invention, having been decided in its favor in the New York case, is res adjudicata. The plaintiff meets this contention by replying that there has been no final decree entered in that case, the decree being merely interlocutory, and therefore the res adjudicata rule does not apply. It appears to be conclusively settled that the doctrine of res adjudicata applies only to a final, and not to an interlocutory, decree. Harmon v. Struthers (C. C.) 48 F. 260; Hills & Co. v. Hoover (C. C.) 142 F. 904.

The late Judge Holland, sitting in the latter case in this district, stated the rule as follows: "The only other question to be considered is whether or not the decree awarding a preliminary injunction and accounting, which is still pending, was a final decree and conclusive of the infringement of the copyright for the purposes of this case. If it be not a final judgment, it is not conclusive as between these parties, and should not have been admitted in evidence. It has been held in numerous cases that a decree in equity proceedings awarding a perpetual injunction and an accounting by the defendant to the plaintiff for profits, and referring the case to a master to ascertain the amount thereof which the plaintiff is entitled to recover, which is still pending and undetermined before the master, is an interlocu-

tory and not a final decree, and therefore is not res adjudicata as to any issues involved and was not admissible in evidence."

And an interlocutory decree continues to be such after affirmance by an appellate court, and may be modified or rescinded by the court at any time before final decree. Simmons Co. v. Grier Brothers Co., 258 U. S. 82, 42 S. Ct. 196, 66 L. Ed. 475, where Mr. Justice Pitney, delivering the opinion of the court, said: "The decree of July 24, 1914, although following a 'final hearing,' was not a final decree. It granted to plaintiffs a permanent injunction upon both grounds, but an accounting was necessary to bring the suit to a conclusion upon the merits. An appeal taken to the Circuit Court of Appeals, whose jurisdiction, under Section 129, Judicial Code [Comp. St. § 1121], extended to the revision of interlocutory decrees granting injunctions, followed by the decision of that court reversing in part and affirming in part did not result in a decree more final than the one reviewed. The prayer for relief based upon infringement of patent and that based upon unfair competition in trade were but parts of a single suit in equity. The decree entered pursuant to the decision of the appellate court, did not bring the suit to a conclusion for either purpose. As to unfair competition, it evidenced a quasi-definitive decision in plaintiffs' favor, but an inquiry before a master still was necessary before final decree could pass; an inquiry not formal or ministerial but judicial, in order to ascertain the amount of the damages to be awarded. As to the claim of patent infringement, the decree evidenced a quasi-definitive decision adverse to plaintiffs, which, if nothing occurred to prevent, would in due course be carried into the final decree. But it did not constitute a separation of the cause, nor dismiss defendant from the jurisdiction for any purpose; necessarily this decision remained in abeyance until the cause should be ripe for final decree; there was nothing to take the case out of the ordinary rule that there can be but one final decree in a suit in equity."

It follows that the decree entered in the Second circuit case is not binding upon this court as res adjudicata.

[2] The rule of comity, however, should, no doubt, be applied in persuading this court to follow and accept the conclusions of the District Court and Circuit Court of Appeals of the Second Circuit upon the question of priority of invention, were it not for the consideration to be given to the effect of the decision of the Court of Appeals of the District of Columbia in De Forest v. Meissner et al.

In that case the matter here for decision, that is, the priority of invention of the subject-matter disclosed in the Armstrong application, and also disclosed as to the feed-back arrangement in the De Forest applications for patent No. 1,507,017, and as to the oscillating audion for patent No. 1,507,016, both to De Forest, the fact sought to be established here was found in favor of De Forest.

The rule laid down in Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, is thus stated in the syllabus: "When a question between contending parties, as to priority of invention, is decided in the Patent Office, the decision there made must be accepted as controlling, upon that question of fact, in any subsequent suit between the same parties, unless the contrary is established by testimony which, in character and amount, carries thorough conviction."

The rule thus laid down was applied by Judge Morris in the District Court for the District of Delaware in Victor Talking Machine Company v. Brunswick-Balke-Collender Co. (D. C.) 290 F. 565, where it was necessary to determine the effect of a decision of the Court of Appeals of the District of Columbia on an interference proceeding coming into that court upon appeal from the decision of the commissioner of patents. Judge Morris, in a well-reasoned opinion, held that the rule of Morgan v. Daniels applies to the decision of the Court of Appeals of the District of Columbia upon the question of priority of invention.

Upon appeal, the Circuit Court of Appeals for this Circuit in a per curiam said (8 F.[2d] 41):

"The learned district judge held that the testimony before him was not sufficient in character and amount to carry thorough conviction that the conclusion of the Court of Appeals was erroneous, and so under the doctrine of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, he felt constrained to award priority of invention to Browning."

The decree was affirmed upon Judge Morris' opinion.

And in Earles v. Drake Manufacturing Co. (C. C. A.) 300 F. 265, Judge Woolley said: "In approaching the question of priority of invention—a pure question of fact—we are confronted by two long-established rules; one, that prior invention, to serve as an anticipation of a patent, must be established beyond a reasonable doubt (Cantrell v. Wallick, 117 U. S. 689, 695, 6 S. Ct. 970, 29 L. Ed. 1017; Barbed Wire Case, 143 U. S. 275, 284, 12 S. Ct. 443, 450, 36 L. Ed. 154), the other, when that question has been decided by the Patent Office in interference proceedings, 'the decision there made must be accepted as controlling upon the question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries * * * conviction.' Morgan v. Daniels, 153 U. S. 120, 125, 14 S. Ct. 772, 773, 38 L. Ed. 657."

As between the record of the Court of Appeals of the District of Columbia in the interference proceeding and the records of the District Court and the Circuit Court of Appeals of the Second Circuit, all of which were in evidence in this case, there can be no doubt that the decision of the Court of Appeals in the interference proceeding must be controlling, unless the additional testimony in the instant case is such in character and amount as to carry conviction that the Court of Appeals of the District of Columbia was in error upon the question of priority of invention. And, there being no question that the claims of the respective patents specified in the bill of particulars are in interference as covering the same subject-matter, the sole question for decision is whether Armstrong's or De Forest's assignee is entitled to a finding of validity of its interfering claims upon the ground of priority of invention. There is no doubt that Armstrong is entitled to whatever standing the effect of a conception of his invention in October, 1912, followed by the witnessed sketch on January 31, 1913, gives him.

If De Forest prevails, it is upon the ground of his conception of the invention evidenced by the entries and diagram in the Van Etten note book of August 6, 1912. It does not appear to have been doubted by the various tribunals of the Patent Office that this record, with the accompanying drawing made by Van Etten working under the direction of De Forest, clearly shows a feed-back circuit, and that, when connected, it produced oscillations evidenced by "a beautiful clear tone," and that the more complete demonstration of August 29, 1912, of which full and complete entries were made by Van Etten in the De Forest record book, revealed the feed-back circuit.

This is clearly demonstrated in Justice Van Orsdel's opinion, and the assistant commissioner, from whose decision the appeal was taken, decided against De Forest, not upon the ground that he had not conceived the invention nor reduced it to practice, but that, after reduction to practice, he had abandoned the invention. The contention of abandonment is disposed of by the Court of Appeals and its conclusion reached after thorough con-

sideration of what De Forest did and the circumstances which caused a delay in the application for a patent for the oscillating audion.

The court had under consideration the work done by De Forest and Van Etten prior to August, 1912, the disclosure of the invention to Stone in October, 1912, concerning which Stone reproduced a drawing similar to the diagrams made in August, De Forest's putting into actual practice the oscillating audion on April 17, 1913, after his return to California, his return to New York, and application for a patent for the amplifier and relay filed in June 1913, for the purpose of raising funds to commercialize the present invention, his joint work with Logwood and application on March 12, 1914, for the oscillating audion invention, the manufacture and sale of apparatus embodying that invention, the application filed September 23, 1915, by De Forest individually for the oscillating audion which was found to be De Forest's sole invention, and not that of him and Logwood jointly.

The evidence supporting the finding of the Court of Appeals that De Forest had not abandoned his invention, but used due diligence during the period intervening between its conception and the filing of the application, is sufficiently convincing to reinforce the controlling effect of its decision of that fact. That the invention set out in the joint De Forest and Logwood patent and that in De Forest patent No. 1,507,016 are identical is satisfactorily established by the testimony of Dr. Cohen and Mr. Dyer, the plaintiff's experts, upon comparison of figure 3 of the De Forest patent with figure 1 of the De Forest and Logwood application as originally filed.

The defendant's case, presented for the purpose of supplying testimony to break down the controlling effect of the decision of the Court of Appeals, rests chiefly upon the testimony of its expert, Mr. Hogan. He was an impressive witness. He exhibited a knowledge of the technical science involved remarkable for its breadth and clearness in every detail of the subject-matter on which he was examined, the result of the training and experience of a keen mind in years of experimental and practical work in his profession. While he conceded in his testimony that the Van Etten diagram disclosed a feed-back circuit, he testified that squeals or whistles with the audion detector had been obtained by freak effect of gas action long prior to 1912, and his opinion was that the beautiful clear tone referred to in the Van Etten notes was merely

a freak or gas effect, and not caused by means of the feed-back circuit. A physical demonstration was made to reinforce this opinion of Armstrong.

I fail to see that this testimony is based upon anything but conjecture. Moreover, the subject of the production of whistles and squeals during the operation of audion detectors was presented quite thoroughly in the interference proceedings. While Mr. Hogan's testimony has had respectful consideration, I am by no means convinced that it should carry sufficient weight, it being at most merely opinion evidence, to overcome the findings of the Patent Office and of the Court of Appeals that the De Forest disclosures cover the true feed-back circuit arrangement. While, however, Mr. Hogan's conclusion that the phenomena produced as a result of the circuit arrangement set forth in the Van Etten diagram were due to freak or gas effect is based wholly upon his opinion, and not upon anything inherent in the diagram and notes, yet his opinion that the August, 1912, entries and diagrams do not show a feed-back circuit is based upon the fact that the entry shows no means of controlling the circuit or the frequency of the oscillations of the current produced.

It has been shown, however, in the case that the fact that the frequency of any alternating current can be varied by varying the inductance or capacity of the circuit in which it flows was well known to electrical engineers generally prior to 1912. It would not seem necessary, therefore, to include in the entries and diagrams what any engineer would know was necessarily included in the physical arrangement as means of control. But from this omission Mr. Hogan draws the conclusion that, while the Van Etten entries show a feedback circuit, it is not the feed-back circuit of the Armstrong patent. As the entry clearly shows what has been recognized by the tribunals of the Patent Office as a true feedback circuit, the fact that, if Mr. Hogan had made the diagram and entries, he would have included such means of control is not sufficient to overcome, in my mind, the effect of the diagrams and entries upon the minds of those skilled in the art and having authority to pass upon the effect of symbols and notations ordinarily used in diagrams and descriptions pertaining to this art.

Mr. Hogan has also placed a construction upon the Lindredge article in the "Telephone Engineer of September 9, 1912." It is contended by the defendant that, under the Hogan testimony, the Lindredge article disclosed everything that was disclosed by the Van

Etten entries, and that, therefore, the De Forest invention was anticipated by a publication more than two years prior to the date of his application. This Lindredge article was introduced in the interference proceedings, and adds nothing new to the case.

The Hogan testimony has failed, in my opinion, to add testimony in character or amount sufficient to overcome the controlling effect of the Court of Appeals decision, whether standing alone or in addition to the effect of the testimony of Fuller. That testimony is purely negative in character, and is merely to the effect that, in his capacity as radio engineer for the Federal Telegraph Company of San Francisco, De Forest's discovery of the feed-back circuit and oscillating audions was not brought to his attention by De Forest. I am unable to draw a conclusion of fact from the testimony of this witness which would overcome the weight of the evidence of the Van Etten entries, the testimony of Stone, and that of Van Etten, Logwood, and De Forest, which was before the Court of Appeals.

Without further reviewing the defendant's testimony in this case, I conclude that I do not find it sufficient in character and amount to carry conviction, and thus to overcome the controlling effect of the decision of the Court of Appeals of the District of Columbia.

I, therefore, find as to each and every claim of the Armstrong patent set out in the plaintiff's bill of particulars that they are in interference with those of the De Forest patents therein set out; that De Forest was the first and original inventor of the feed-back circuit and the oscillating audion; that the claims 1, 2, 3, 5, 8, 9, 12, 14, 15, 16, 17, and 18 of Armstrong patent No. 1,113,149 are invalid.

A decree may be entered for the plaintiff accordingly.